THE DES MOINES STREET R. R. CO. v. THE DES MOINES BROAD-GAUGE STREET R'Y CO.

THE SAME v. THE CITY OF DES MOINES ET AL.

THE SAME v. THE DES MOINES BROAD-GAUGE STREET R'Y CO.

1. Cities and Towns: STREET RAILWAYS: EXCLUSIVE RIGHT: CONSTRUCTION OF ORDINANCE. A city ordinance granting to a street railway company the right to lay a single or double track along all its streets, and providing further that "the right herein granted to said company to operate said railway shall be exclusive for the term of thirty years," and that "the said city shall not, until the expiration of said term, grant to or confer upon any person or corporation any privileges which will impair or destroy the rights or privileges herein granted to said company," *held* to mean that the said city should not permit rival companies to operate street railways on its streets during that time, and not simply that it would grant no right to interfere with said company in operating the railroad which it might build.

514                    SUPREME COURT OF IOWA,

The Des Moines Street R. R. Co. v. The Des Moines B.-G. Street R'y Co.

2. ———: ———: ———: POWER TO GRANT. Before the enactment of § 464 of the Code, giving to cities the power to authorize or forbid the location and laying down of tracks for railways and street railways, the city of Des Moines by ordinance granted to plaintiff's assignor the exclusive right to build and operate street railways on its streets for a term of thirty years. Whether, without legislative grant, the city had or had not the power to grant such exclusive right, *held* that, under said section, it had the right to ratify the grant, and to make the privilege practically exclusive by withholding it from others; also, that it had power to bind itself by contract to withhold it for a reasonable time from others, if it deemed it necessary to make such contract in order to secure a service to the public which it might not otherwise be able to do. (Compare *Burlington & Henderson County Ferry Co. v. Davis*, 48 Iowa, 133, and other cases cited in opinion.)

3. ———: ———: ———: RATIFICATION OF ULTRA VIRES CONTRACT. In such case, after the enactment of § 464 of the Code, the city council, by what was meant for an ordinance, but which, perhaps, was not an ordinance in law, undertook, among other things, to ratify the contract which it had made by ordinance with plaintiff's assignor when it had no authority to make it; and everyone understood it as a ratification, binding on the city and plaintiff's assignor; and the plaintiff's assignor acted upon it and expended money in laying additional track and in paying for street pavement. *Held* that the action, though not resulting in an ordinance, amounted to at least a resolution, sufficient to bind the city to the terms of the original contract; and that this was so, although the so-called ratifying ordinance provided that ordinances granting privileges should not be enlarged thereby; for the proper meaning thereof was only that they should not be enlarged beyond their original intention.

4. ———: ———: ———: CONSTITUTIONAL RESTRICTION. Section 12, art. 8, of the constitution, which declares: " No exclusive privileges, except as in this article provided, shall ever be granted," *held* not to apply to the grant by a city, to a person or company, of the exclusive right to build and operate street railways on the city streets.

5. ———: ———: ———: CITY OF DES MOINES: Under an ordinance of the city of Des Moines, passed in 1866, granting to the plaintiff's assignor the exclusive right to build and operate street railways on all its streets for a term of thirty years, as subsequently ratified by the city council, *held* that the plaintiff has the exclusive right to build and operate street railways on all the streets of said city; and that the public rights are secured by an implied obligation on the part of the plaintiff, acting under the ordinance, to hold itself in readiness at all times to construct and operate so much track, and upon such streets, as the public convenience may require, to be determined by the city council in the exercise of a reasonable and proper discretion,—the company to have a reasonable time to comply after the requisition shall be made. [ADAMS,

Ch. J., *dissenting*, so far as to hold that plaintiff's exclusive right does not extend to streets not entered upon by it until they have been occupied by another company.]

[Note.—In a supplemental opinion, the court states that it is not to be understood as holding that the city is precluded, by the ordinance under which the plaintiff is acting, from availing itself of any improved street railway to be operated by other than animal power, if reasonably necessary to meet the public wants. Such question not being in the case, no opinion is expressed thereon.]

## *Appeal from Polk Circuit Court.*

### Monday, June 27.

These cases are submitted together as involving the question as to the respective rights of the plaintiff, the Des Moines Street Railroad Company, and the defendant the Des Moines Broad-Gauge Street Railway Company, to occupy certain streets of the city of Des Moines. The first case is an action to enjoin the defendant, the Des Moines Broad-Gauge Street Railway Company from interfering with the plaintiff in laying its tracks upon certain streets, and for a decree that it has no rights in those streets. The second is an action for an injunction to prevent the city and city officers from interfering with the plaintiff in laying its track. The third pertains to a different street, but involves substantially the same legal questions. The decree rendered is quite lengthy, and we cannot properly set it out in full. It enjoined the defendant, the Des Moines Broad-Gauge Street Railway Company, from occupying a portion of one street, and gave the plaintiff an exclusive right therein. It allowed the defendant to occupy other streets, and made various provisions in regard to occupancy. Both the plaintiff and the Des Moines Broad-Gauge Street Railway company appeal; the former perfecting its appeal first.

*Kauffman & Guernsey* and *Parsons & Perry,* for appellant.

*Baylies & Baylies,* for appellee.

ADAMS, CH. J.—The plaintiff's claim is that it has for the present, under the ordinances of the city, an exclusive right to furnish to the city of Des Moines its street-railway service, and to occupy for that purpose, without hinderance or competition by any other street-railway company, so many of the streets as may be necessary, and that it will continue to have such right for a limited time to come, if it complies with its obligations, express and implied, arising under the ordinances in question. If this claim shall be sustained, the determination thus made will dispose of the other questions in the case.

1. CITIES and towns: street railways: exclusive right: construction of ordinance.

In 1866 the city council of Des Moines passed an ordinance whereby it granted to the plaintiff's assignor, a company organized as a street-railway company, the right to lay a single or double track along all its streets. The same ordinance provided that " the right herein granted to said company to operate said railway shall be exclusive for the term of thirty years." Many other provisions were made, not important to be set out.

The plaintiff relies upon the provision above quoted as being sufficient, so far as its terms are concerned, to give the exclusive right claimed, and insists that the provision is valid, if not originally, for want of legislative grant of power, yet subsequently, by such grant by the legislature, and by ratification of the ordinance by the council.

The defendant company obtained an ordinance in 1886, and proceeded to occupy certain of the streets with its track. It denies that the right claimed by the plaintiff under the ordinance of 1866 appears to be given, even by the terms of the ordinance. Its position is that the exclusive right granted pertains merely to the operation of the railroads which the plaintiff's assignor should build, and not to the streets, and that the plaintiff's right is not interfered with by occupancy of other or the same streets, if the plaintiff is not hindered in the operation of its road.

In our opinion, however, the meaning of the provision is the same as if it read, " the right herein granted to said company to operate said railway shall be exclusive " of other street railways. It was not necessary to provide by ordinance that other persons should not run cars on the plaintiff's assignor's track, nor obstruct its cars; and no one, we think, looking at the ordinance, can suppose that that was all that was intended. So far, the plaintiff's assignor's right would be exclusive by reason of the mere right of property, and without any ordinance. If anything more were necessary, we find it in the very section of the ordinance under consideration. It is provided in the same section, and same sentence, as follows: "And the said city of Des Moines shall not, until the expiration of said term, grant to or confer upon any person or corporation any privileges which will impair or destroy the rights and privileges herein granted to said company." The right granted was to lay and operate a track on all the streets of the city. The construction and operation of a rival railway would impair the plaintiff's rights. It might not constitute a physical interference, but it would impair, if not destroy, the plaintiff's enterprise, so far as the profits were concerned; and those, we may assume, constituted the sole object of the enterprise. We cannot think that there is any reasonable doubt about the meaning of the ordinance. We think that the city undertook to exclude rival companies which would interfere with the profits of the company for whose benefit the provision was intended.

The defendant company's next position is that the provision in question is void for want of power in the city to make

2. $\frac{\text{—: —: power}}{\text{to grant.}}$ such provision. The fact is that there does not seem to have been, as early as 1866, any legislative grant to the city of power to confer upon an individual or corporation an exclusive right. The plaintiff contends that no such legislative grant was necessary, and adduces some very able arguments in support of its position. We do

not find it necessary to determine this question. It was afterwards provided, in section 464 of the Code, that the city council shall have " power to authorize or forbid the location and laying down of tracks for railways and street railways." The plaintiff contends that the power to forbid is sufficient to enable the city council to make a granted right practically exclusive, for such time as it may see fit, by withholding the right from others. This, of course, cannot be denied. The doubt, if any, is as to whether the council, having the power to make a granted right practically exclusive by withholding it from others, can bind itself by contract to withhold it for a limited time from others, if it shall deem it necessary to make such contract in order to secure a service to the public which it might not otherwise be able to do.

The question presented calls for a construction of the provision of the statute which gives the " power to authorize or forbid the laying down of tracks." The plaintiff contends that we have virtually placed a construction upon this statute in the construction given to words of similar import in the charter of the city of Burlington. The case relied upon is *Burlington & Henderson County Ferry Co. v. Davis*, 48 Iowa, 133. In that case it was held that the power to grant or refuse a ferry license involved the power to make a granted ferry license exclusive for a limited time. The defendant contends that that construction is not authoritative, even in respect to that charter, because the decision of the case might have been placed upon other ground, and, besides, it is said that the same or similar words should not be so construed when applied to a street railroad. The court having elected to put the decision in that case upon the ground upon which it did, it appears to us that the construction given should be deemed authoritative, so far as the precise question is concerned which was before the court. Whether the case of a ferry stands upon such peculiar ground that a court would be justified in finding, in given words, a power to grant an exclusive license, more readily than it would find, in words

of similar import respecting a street railway, the power to grant an exclusive right of construction and operation, is a question upon which much might be said. · A ferry is looked upon as an extension of a highway. It must be maintained in a safe way, and at stated times, so that the public can rely upon it. It is not probable that the requisite service could always be secured without contract, and in some instances, we presume, a contract could not be obtained which did not provide for an exclusive right. As to a street railroad, it is said that there is no such exigency, as street-railroads furnish only one mode of travel in the midst of others.

But street railroads certainly are coming to be regarded as of great importance, if not indispensable. The tendency of modern cities is to spread over large areas for the purpose of securing better light and air. This is made possible principally by the cheap and easy mode of transit which street railroads furnish. They are not simply a present convenience, but they anticipate and promote the growth of cities. They create, to some extent, their own patronage, by the promotion of the growth and the distribution of the population. Without question, they are of sufficient importance to call for very careful consideration, both by legislatures in the enactments of statutes concerning them, and of courts in construing the same.

We are justified in assuming that Iowa has to-day a considerable number of cities contemplating the inauguration of street-railroad service. In many, probably, if not in most, instances, the lines must at first be operated at a loss. In the case at bar, it is said that the lines were operated at a loss for fourteen years, being nearly half of the time during which the city undertook to provide an exclusive right. The losses were sustained, and additional tracks laid, involving an investment of over $200,000, in reliance upon the future. Almost immediately after the plaintiff's road became remunerative, the defendant company sought an opportunity to compete, and to divide the very patronage which the plaintiff, at its loss,

had aided in creating. The question presented is as to whether there is any way in which cities can contract against themselves, so as to furnish any security that the losses of the early years may be repaired by the profits of the later ones. The defendant company contends that there is not. Its position is that it would be unsafe to allow a city to contract even for a limited time, because it cannot anticipate its own wants, and the power, if given, would be improperly exercised. Its argument is that city councils, as a rule, have neither sufficient honesty nor foresight. It cites and quotes largely from an opinion of Judge BREWER, in *Jackson County Horse R'y Co. v. Rapid Transit Co.*, 24 Fed. Rep., 306. In that case the learned judge said: "The city may to-day determine that one street railroad will answer all the wants of the public, and so give the privilege of occupying the streets to a single company. Ten years hence its judgment may be that two railroads are needed."

It may be conceded that the future growth and wants of a city cannot be foreseen. The most that can be said is that they may ordinarily be predicted with reasonable approximation for a limited time. From this we are inclined to think it follows that an ordinance providing for an exclusive right in perpetuity, however necessary it might be to contract for the service involved in the exercise of the right, would be unreasonable, and might be declared void. In Dill. Mun. Corp., § 715, the author, commenting upon *Davis v. Mayor of New York*, 14 N. Y., 506, says: "The judgment of the court rests upon the sound principle that the powers of a corporation, in respect to the control of its streets, are held in trust for the public benefit, and cannot be surrendered or delegated by contract to private parties; and hence the resolution of the city council, authorizing private persons to construct and operate a railroad upon certain terms, without power of revocation, and without limit as to time, was not a license or act of legislation, but a contract,—void, however, because,

if valid, it would deprive the corporation of the control and regulation of its streets."

In the case at bar, the time limited was thirty years, which does not seem to be unreasonable, and especially in view of the fact that the lines were operated at a loss for fourteen years. Possibly thirty years, or any shorter time, should be deemed too long in any case, if the contract were such that the street-railroad company could not be required to meet the public wants as the same should arise. In the case at bar, two miles only of track were specifically stipulated for, but it is not denied by the plaintiff that the acceptance of the ordinance which allowed its assignor to lay a track upon all the streets raised an implied contract upon the part of its assignor to lay so much track as reasonably might be demanded by the public. At the time of the commencement of this controversy, the plaintiff and its assignor had in fact laid ten miles of track, and was contemplating the laying of still more. It may be that neither the plaintiff nor its assignor did all that it should; but such a question is not before us. The ordinance appears to us to be reasonable; and our holding is that, under our statute, which empowers cities to authorize or forbid the laying down of a street-railroad track, a city council may make a reasonable provision by contract for present and future street-railroad service, and may secure the company contracted with against the impairment of its profits for a limited time, and against interference with its extension during the time, if a larger and better or more immediate service can be thus obtained. This question has never before been determined by this court; but the ruling in *Burlington & Henderson County Ferry Co. v. Davis*, 48 Iowa, 133, goes far towards supporting the views which we have expressed. See, also, as having a slight bearing upon the case, *City of Davenport v. Kelly*, 7 *Iowa*, 102, and *City of Dubuque v. Stout*, 32 Id., 80; *City of Burlington v. Burlington Street R'y Co.*, 49 Id., 144. In *New Orleans Gas Light Co. v. Louisiana Light Co.*, 115 U. S., 650 (669,)

6 Sup. Ct. Rep., 252, and in *Boston & L. R. Corp. v. Salem & L. R. Co.*, 2 Gray, 1, cited by plaintiff, the question was essentially different; but there is much said in the course of the opinion showing the view which those courts took in regard to the importance sometimes of securing a service to the public by contract, even though the contract should for a limited time grant an exclusive right. Other courts have held somewhat different views, supported by more or less weight of reasoning. Some of the reasoning, however, we think, cannot be allowed much weight as applied to the condition and policy of Iowa.

Having reached the conclusion that, under the section of the Code above cited, the power had been conferred to make the contract in question, we have to consider whether it appears that the city council, after the Code took effect, ratified the contract which it had previously (and, as we will assume, without power) undertaken to make. There is no question but that the council undertook to adopt an ordinance purporting to revise and readopt certain ordinances, including the one under which the plaintiff's assignor commenced the construction of the road. It is claimed, however, that this ordinance is void, because it embraced as many subjects as there were ordinances referred to. For the purposes of the opinion, it may be conceded that what purports to be an ordinance did not take effect as such. But it appears to us that it has the force, at least, of a resolution, so far as the provision in question is concerned. The plaintiff's assignor acted upon it, and expended money, not only in laying additional track, but in paying for street pavement. We feel justified in saying that everyone understood that the ordinance of 1886 was ratified and binding upon the city and the plaintiff's assignor, and that what was done afterwards was done with that understanding.

It is true that it is provided in the so-called ordinance relied upon as an act of ratification, that "all ordinances

*Marginal note:* 3. ——: ——; ——; ratification of ultra vires contract.

granting privileges, or which expired after a term of years, shall not be enlarged or abridged by their incorporation into these revised ordinances." The defendant relies in part upon this provision. It insists that, if the plaintiff is sustained, it would follow that an ordinance granting a privilege would be enlarged. In one sense this might be true, but not, we think, in the sense of the provision. In our opinion, the meaning of the provision is that the ordinances thus revised should not be enlarged beyond the original intention.

We reach the conclusion, then, that the plaintiff's right is exclusive, unless there is something in the constitution of Iowa which operated as a restriction upon the legislature, which prevented the grant of power in question to the city. It is contended by the defendant company that the constitution does prevent such grant. The restriction relied upon is found in section 12, art. 8, and is in these words: "No exclusive privileges, except as in this article provided, shall ever be granted." To determine what is meant, we must look at the context. The provision is found in article 8, which pertains to corporations. The article limits, to some extent, the powers and rights which a body of men might claim as a corporation. We do not think that it was intended to limit the powers and rights of individuals, except in their relation to a corporation. Now, while it may be that the plaintiff's assignor was a corporation, yet the right in question was not a corporate right. If it exists, it is simply by contract, as an individual might obtain and enjoy the right. In our opinion, the provision does not apply to a case like that at bar.

So far the members of the court are substantially agreed, but the writer of this opinion does not reach the same result throughout that is reached by the majority. We are agreed that, when the plaintiff is operating a track, no other company can be allowed to operate a parallel

track upon the same street.   We are also agreed that, where the plaintiff has entered upon a street, and is operating a track to some extent, in good faith and with intent to supply the public wants, upon such street, it should have the right to extend its track upon the same street, if done within a reasonable time, and that no other company should be allowed to occupy the same street.   The writer, however, is of the opinion that the plaintiff's exclusive right does not extend to streets not entered upon by it until they have been occupied by another company.   He does not think that the ordinance took effect as a contract in relation to a given street until the plaintiff or its assignor manifested its acceptance by actual entry upon and occupancy of at least some part of the street.

The majority think that the ordinance took effect as a contract in relation to all the streets at the time of its written acceptance by the plaintiff's assignor, which it appears was made soon after the passage of the ordinance; and that the public rights are secured by an implied obligation on the part of the company, acting under the ordinance, to hold itself in readiness at all times to construct and operate so much track, and upon such streets, as the public convenience may require, to be determined by the city council in the exercise of a reasonable and proper discretion,—the company to have a reasonable time to comply after the requisition shall be made.

Upon the defendant's appeal, the decree must be affirmed; and, upon the plaintiff's,                              REVERSED.

### SUPPLEMENTAL OPINION.

### SATURDAY, DECEMBER 17.

PER CURIAM.—A petition for rehearing has been filed in this case, and was fully argued at the last term.   We have re-examined the case, and conclude that the petition for a rehearing must be overruled.   It is proper, however, that we

should say, in order to prevent any misconstruction of our opinion, that it was not our intention to hold, and it is not held, that the city is precluded by the ordinance under which the plaintiff is acting from availing itself of any improved street railway, to be operated by other than animal power, if reasonably necessary to meet the public wants. We did not regard such question as in the case, and on that we express no opinion.