## TEACHOUT v. THE DES MOINES BROAD-GAUGE STREET-RAILWAY COMPANY.

1. **Corporations:** RIGHT OF STOCKHOLDER TO ENJOIN ULTRA-VIRES ACTS. A stockholder in a corporation may maintain an action to restrain the corporation from acts in excess of its corporate authority.

2. **Intervention:** NOT PERMITTED TO DELAY CAUSE. When a cause has been submitted to the court upon an agreed statement of facts, it is not error to deny a third party the privilege of intervening, when such intervention would raise new issues, and require a continuance of the main cause for the purpose of hearing testimony.

3. **Cities and Towns:** STREET RAILWAYS: MONOPOLY OF PASSENGER TRAFFIC: ORDINANCE CONSTRUED. An ordinance of the city of Des Moines, granting to the Des Moines Street-Railroad Company the exclusive right for thirty years to use its streets for the construction and operation of street railways, to be operated by animal power only, and providing further that " the said city of Des Moines shall not, until after the expiration of said term, grant to or confer upon any person or corporation any privileges which will impair or destroy the rights and privileges herein granted to said company," does not deprive the said city of the power to confer upon another company, before the expiration of the thirty years, authority to build railways on its streets to be operated by power other than animal power. The diminution of the revenues of the first company on account of the operation of the second one is not such an impairment of its rights and privileges as is contemplated in, and prohibited by, the ordinance. (*Railroad Co. v. Railway Co.*, 73 Iowa, 513, *distinguished*).

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, JR., Judge.

FILED, MAY 17, 1888.

THIS is a proceeding under section 3408 of the Code, by which the parties thereto presented to the court below an agreed statement of facts, and sought the determination of the question whether the Des Moines Broad-Gauge Street-Railway Company has legal power and authority to operate street railroads in the city of Des Moines by electricity or other motive power other than animal power. The issue presented by the agreed statement of facts was in the nature of an action in equity, and the object was to enjoin the Broad-Gauge Street-Railway Company from expending its money and resources in applying the said motive power to propel its cars upon its railroad tracks now constructed, and from constructing other lines of road to be operated by said power. The Des Moines Street-Railroad Company appeared and sought to intervene in the proceeding. The right to intervene was denied, and upon a final hearing there was a decree enjoining the defendant from equipping and operating its lines of street railway, now in the streets of the city, with electric or other motive power other than animal power, and from expending the funds and moneys of said company in the construction of other lines of street railway in said city to be so operated. The defendant appeals from this decree, and the Des Moines Street-Railroad Company appeals from the order denying it the right to intervene in the proceeding.

*Read & Read*, for H. E. Teachout, appellant.

*Parsons & Perry* and *Kauffman & Gurnsey*, for the Des Moines Street-Railroad Company, appellant.

*Baylies & Baylies*, for appellee.

ROTHROCK, J.—I. This proceeding grows out of the litigation which originated between the Des Moines Street-Railroad Company and the Des Moines Broad-Gauge Street-Railway Company, two rival street railways in the city of Des Moines. It is in fact another feature of the contention between said companies which was so elaborately considered by this court in the case of *Des Moines St. R. R. Co. v. Des Moines Broad-Gauge St. Ry. Co.*, 73 Iowa, 513, and other cases. After the filing of the opinion on rehearing in the cases named, the city council, by certain resolutions duly passed, determined that the accommodation of the city, and the welfare of its inhabitants, required that improved motive power, other than animal power, and by which cars can be moved at an average speed of not less than eight miles an hour, should be used upon all broad-gauge street-car lines then in operation in the city, and upon all present and future extensions of said lines ; and, by an ordinance passed by the council, authority was given to the Broad-Gauge Company to change its motive power from animal power to electricity, or to such other motive power as may be found practicable to move its cars at the required rate of speed. These acts of the city council were done in pursuance of an application made by said railway company to the council. The plaintiff Teachout is a stockholder in the Broad-Gauge Company, and is surety for it upon some of its indebtedness. He was active in procuring permission from the city council to the company to change its motive power. After the permission and authority were secured he instituted this proceeding, in which he claimed that the corporation in which he was a stockholder could not acquire any valid authority from the city council to operate a street railroad in said city by any propelling power. He was overruled by act of the corporation before this proceeding was commenced. The agreed statement of facts sets forth this matter of difference, and the question presented to the court for its determination was whether the city council had any power or

authority to confer the right upon the company, in view of the decision of this court in the cases above cited. The Des Moines Street-Railroad Company, being what is known as the "Narrow-Gauge Railway Company," appeared, and filed what was denominated a "petition of intervention," in which it was claimed that the proceeding was fictitious, and a fraud upon the rights of the Narrow-Gauge Company, and that it was not a real controversy between the parties, and demanded that it be dismissed. A motion was made by the parties to the proceeding to strike the petition of intervention from the files, for the reason, among others, that the cause had been submitted to the court for its decision, and that there was no right to intervene in the action, and make demands which would delay its determination. This motion was sustained, and the application to intervene was overruled ; but, inasmuch as it had been suggested to the court that the controversy was not real and in good faith between the parties, it was ordered that the plaintiff and the officers of the Broad-Gauge Company appear at a time named, and submit to an examination touching the question of good faith and the real nature of the controversy, and that the Des Moines Street-Railroad should be permitted to appear, and examine the said parties touching the controversy, and to introduce other proof on said question material thereto. Thereupon an investigation was had, evidence was introduced, and the cause was submitted to the court, and at the same time, or about that time, another petition of intervention was filed by the Des Moines Street Railroad Company, in which a demand was made that it be allowed to intervene in the merits of the case. On the final submission the following orders were made:

"This cause having been heretofore submitted to the court by and between the parties, upon the written submission and statement of facts filed with the clerk on the fourth day of February, 1888, and the court, being fully advised in the premises, finds that the equities are with the plaintiff, H. E. Teachout. It is therefore ordered and decreed by the court that the defendant,

the Des Moines Broad-Gauge Street-Railway Company, be restrained and enjoined from equipping and operating its lines of street railway, now laid in the city, with electric or other motive power other than animal power, and from expending the funds and moneys of said company in so equipping said line of road, or in constructing, for operation in said city, other lines of street railway, and that the costs of this proceeding be taxed against the defendant. The Des Moines Broad-Gauge Street-Railway Company excepts. And the Des Moines Street-Railroad Company is refused leave to file its petition of intervention, to which the said Des Moines Street-Railroad Company excepts, and has five days in which to file its bill of exceptions.

"MARCUS KAVANAGH, JR., Judge."

"Now upon this eleventh day of February, 1888, this cause coming on to be further heard upon the petition and motion of the Des Moines Street-Railroad Company that the court decline to receive and determine this cause upon the submission and agreed statement of facts by the said Teachout and the said Des. Moines Broad-Gauge Street-Railway Company, for the reason that there is no real controversy between said parties, but the same is a fraud upon both the court and the said Des Moines Street-Railroad Company, pursuant to the order of this court made thereupon on the sixth day of February, 1888 ; and the said Des Moines Street-Railroad Company appearing by its counsel, Galusha Parsons, and the said H. E. Teachout by his counsel, W. L. Read, and the said Des Moines Broad-Gauge Street-Railway Company by its counsel, R. N. Baylies, and the same having been taken under advisement: Now, upon this thirteenth day of February, 1888, it is ordered that the said petition and motion be, and the same are hereby, in all things denied ; to which ruling and decision the said petitioner, by its counsel, in open court, duly excepted. And the said Des Moines Street-Railroad Company having presented its petition for leave to intervene to the merits of the said submission, the said petition and motion are denied ; to which ruling

and decision the said petitioner, by its counsel, in open court, duly excepted. It is further ordered and adjudged that the said H. E. Teachout recover of and from the said Des Moines Street-Railroad Company his costs of said proceeding, taxed at ——, to which the said Des Moines Street-Railroad Company duly excepted; and it is further ordered that, in the taxation of such costs, the clerk of this court will not tax, as a part thereof, any fees for the said Teachout, or the other officers of the said Des Moines Broad-Gauge Street-Railway Company.

"MARCUS KAVANAGH, Judge."

It will thus be seen that the court was of the opinion that the suggestion that the agreed statement of facts did not present a real issue between the parties, but was a fraud upon the court and upon other parties, was not well founded, and rendered a decree accordingly. We do not deem it necessary to review the evidence upon this question in detail. We are satisfied that the district court was correct in determining that the proceeding ought not to be dismissed as fictitious. It is not claimed that a stockholder in a corporation may

1. CORPORATIONS: right of stockholder to enjoin ultra-vires acts.

not maintain an action to restrain the corporation from acts in excess of its corporate power or authority. It is well settled that such an action will lie. Sims v. Street Ry. Co., 37 Ohio St. 556; Cook, Stocks, secs. 672–674, and authorities there cited. The matter of difference which was submitted to the court was one not of mere expediency as to the prosecution of the business of the corporation. Counsel for the Des Moines Street-Railroad Company strenuously contend that the company they represent have the exclusive right to construct, maintain and operate street railroads in the city; and, if their contention is correct, it would be a most flagrant violation of the corporate powers of the Broad-Gauge Company to waste its substance, and involve its stockholders in a large expenditure of money, without legal authority to move a car upon the streets; and this was the very question which was presented to the court for

its determination. And while it may be true that Teachout was active in his endeavors to save the property of the company, and prevent the great loss consequent upon the adjudged exclusive right of the Narrow-Gauge Company, it does not follow that he agreed with the officers and counsel of said company that the decision of this court precluded the company in which he was a stockholder from operating their lines by a motive power other than animal power. The record shows that, so far as his action as a director of the corporation was concerned, he opposed taking any corporate action to apply electric power to the lines of street railroad then owned by the company.

II. Counsel for the Des Moines Street-Railroad Company complain that it was not allowed to intervene in the proceeding. It is very clear that it 2. INTERVEN-TION: not permitted to delay cause. had no right to intervene to defeat the action or proceeding. Section 2684 of the Code provides : "The court shall determine upon the intervention at the same time that the action is decided, and the intervenor has no right to delay." And in *Van Gorden v. Ormsby*, 55 Iowa, 657, it is said that "an intervenor cannot be allowed to tender an issue which can be tried only by a change in the form of proceeding, and a continuance of the cause for testimony. If the person intervening has rights which require protection, and which cannot be determined in the main action without delaying the trial, he ought not to intervene, but should commence an original action, and, if need be, and a proper case therefor can be made, protect his interests by injunction." Now, if the intervenor had presented a petition when its first appearance was made, and without setting up facts which must have unavoidably caused delay, and joined the plaintiff Teachout in the demand that the Broad-Gauge Company be enjoined from applying electricity as a motive power upon its road, and upon the ground that the intervenor had the exclusive right to build, maintain and operate street railroads in the city, it may be that the petition for intervention should have been entertained by the court.

But the record does not show that the court held that there was no right of intervention in any event. The refusal to permit the intervention upon the merits may well have been put upon the grounds that it was presented too late, and that it attempted to raise issues which would necessarily involve delay. As will be seen further in this opinion, the only question to be determined arose upon the ordinances and resolutions of the city council. It is true, the agreed statement of facts recited that the Des Moines Street-Railroad Company had failed to furnish efficient street-car service to the public, and this was denied in the petition of intervention. But, in our opinion, this raised an immaterial issue, as will presently be seen; and the Des Moines Street-Railroad Company is in no position to raise that question because the court below, in effect, determined, with a recital of record before it, that the street-car service was inefficient, and with nothing to contradict or call in question the recital that the Narrow-Gauge Company had the exclusive right to maintain and operate street railroads in the streets of the city.

III. We come now to the question of the power or authority of the Broad-Gauge Company to operate its lines by electricity, or other improved or newly-discovered motive power. This question has been elaborately argued by the counsel above named, and by other counsel in behalf of the city and of North Des Moines and of the public generally. It is well to understand the precise point to be determined. As we view it, the power is undoubted, unless the Des Moines Street-Railroad Company has such an exclusive right to construct, maintain and operate street railroads in the city as to exclude all competition of other lines, whatever motive power may be employed by the other lines. In the cases already determined by this court, involving the rights of these rival companies, we determined that the exclusive right to furnish to the city of Des Moines its street-railway service, for thirty years from the time the right accrued, was in the Narrow-Gauge Company.

3. CITIES and towns: street railways: monopoly of passenger traffic: ordinance construed.

This statement would seem to include all street railways, as well those operated by animal power as those operated by electricity, or by cables operated by steam or other power ; and much of the argument in behalf of the Des Moines Street-Railroad Company is founded upon the claim that this court, in the reasoning in the main opinion, regarded the right to exclusive street-car service without reference to the motive power used. The question then before the court was between two rival companies, both of which operated their lines by animal power. The question of the kind of street-car service was in no manner involved in the case. Those cases were contested, both upon the original submission and upon the rehearing, by able and distinguished counsel. We think it is safe to say that, upon the original argument of the case, the question as to the motive power was not in the mind of court or counsel. At least, it is undoubtedly true that no such question was presented to this court.[*]

In view of the general discussion of the subject in the original opinion, the following language was used in the opinion upon rehearing : " It is proper, however, that we should say, in order to prevent any misconstruction of our opinion, that it was not our intention to hold, and it is not held, that the city is precluded, by the ordinance under which the plaintiff is acting, from availing itself of any improved street railway to be operated by other than animal power, if reasonably necessary to meet the public wants. We did not regard that question as in the case, and on that we express no opinion ;" and the decrees in those cases do not require the Broad-Gauge Railway Company to remove their railroad tracks from the streets. They are enjoined from operating their lines of road by cars moved by animal power after the first day of May, 1888. This supplemental opinion and these decrees are a sufficient answer to the argument of counsel based upon the reasoning of the opinion in the cases cited. It was purposely left as an open question; and, as the *personnel* of the court is now nearly the same as then, it is not

Teachout v. The Des Moines Broad-Gauge St. Ry. Co.

improper to say that such was the intention of the court. It is proper to state that the ordinance authorizing the Broad-Gauge Company to use electricity, or other motive power other than animal power, appears to us to be well guarded, so as to protect the rights of the Narrow-Gauge Company in the use of its lines already in operation, er other lines which it may desire to construct in the exercise of its exclusive right to the use of "horse-cars." And it seems to us that we must determine the rights of the parties by the record they have made, or, rather, by the grant of power given to them by the city council. This grant of power is found in the ordinance of the city which was enacted in June, 1866; and that part of it necessary to be considered in determining this case is as follows: "Section 1. Be it ordained by the city council of the city of Des Moines, that consent, permission and authority is hereby given and granted to and duly vested in the Des Moines Street-Railroad Company, and their successors and assigns, to lay a single or double track for passenger railway lines, with all necessary and convenient tracks for turn-outs, side-tracks and switches in, upon and along all the streets, and such alleys only fronting on which said company have depots, stables, or car-houses, and over the bridges and such streets in the city of Des Moines, with their present and future extensions and connections; and authority is hereby given said company, their successors and assigns, to keep, maintain, use and operate thereon railway cars in the manner and for the time and upon the conditions hereinafter mentioned and prescribed. Sec. 2. The cars to be used upon such tracks shall be operated with animal power only, and shall not connect with any other railway on which other power is used, and no railway car or carriage used upon any other railway in this state shall be used upon any of said tracks. * * * Sec. 10. The right herein granted to said company to operate said railway shall be exclusive for the term of thirty (30) years from the time the first mile of said track is laid and cars running thereon; and the said city of Des Moines shall not,

until after the expiration of said term, grant to or confer upon any person or corporation any privileges which will impair or destroy the rights and privileges herein granted to said company."

It seems to us, keeping in mind the fundamental rule that corporations are invested with such powers only as are expressly conferred upon them, and such other powers as are necessary to carry out those expressly granted, that there is little room for discussion or debate as to the powers conferred upon the Narrow-Gauge Company by this ordinance. It has the exclusive right to operate its railways by animal power; and it has no more right to interpose objections to the building and operation of other street railroads, to be operated by other power, than if no grant of power had ever been made to it. The city, it is true, agreed, by section 10 of the ordinance, that it would not "confer upon any person or corporation any privileges which will impair or destroy the rights and privileges herein granted to said company." It is strenuously contended that the granting of the right to operate other street cars will necessarily impair the rights of the Narrow-Gauge Company, by diminishing its revenue, which is derived from the carriage of passengers. Perhaps this argument is sufficiently answered by the thought that, when the city made the contract based upon this ordinance, the parties thereto were dealing with the known, and not with the unknown. It may well be questioned whether the city had any power to contract that no other means of public travel should be allowed upon the streets of the city except by cars drawn by horses for the period of thrty years. If so, the establishment of hack-lines or omnibus-lines, or other means of public conveyance, would impair the revenue of the Narrow-Gauge Company, and thus impair its rights under this ordinance. Its right is to operate a horse railroad. It is entitled to the exclusive right to do so, and to use all improvements that may be made thereto; but to nothing more. The city cannot impair that right; but it does not follow that it may not authorize other means of street travel. It did not

undertake to confer upon the company the right to carry all the passengers who might desire to travel by public conveyance upon the streets ; and it did not, by the ordinance, contract that new and improved and undiscovered methods of travel might not be adopted as the public wants might demand. This ordinance and contract were made by the city in behalf of the public, and it should not be so construed as to fetter and prevent the right to use new methods and appliances, the result of the inventive genius of the age, or to apply the discovery and application of the latent powers of nature to the uses of man. As well might the chartered owner of a rope-ferry have insisted, years ago, that his exclusive right to that method of transportation prevented the right to charter a ferry propelled by steam when that element of nature was discovered as a propelling power. As sustaining these views, see *Saginaw Gas-Light Co. v. City of Saginaw*, 28 Fed. Rep. 529 ; *Omaha Horse Ry. Co. v. Cable Tramway Co.*, 30 Fed. Rep. 324 ; *Bridge Proprietors v. Hoboken Co.*, 1 Wall. 116.

We think the decree of the district court should be reversed, and a decree will be entered in this court in accord with this opinion, or the cause will be remanded to the court below for that purpose.

REVERSED.