## DES MOINES CITY RY. CO. v. CITY OF DES MOINES.

(Circuit Court, S. D. Iowa, Central Division. February 20, 1907.)

1. COURTS—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A suit by a street railway company claiming in good faith to have a contract with a city giving it a perpetual right to operate its cars in the streets of the city to enjoin the city from impairing such contract by enforcing an enactment of its council treating the company as a trespasser and requiring the removal of its tracks from the streets is a suit arising under the Constitution of the United States of which a federal court has jurisdiction regardless of the citizenship of the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 820–824.

Jurisdiction of federal courts in actions involving federal question, see notes to 11 C. C. A. 308, 35 C. C. A. 7.]

2. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS—LAW OF STATE.

A resolution of a city council directing the removal from the streets of the tracks of a street railway company is a law of the state, within the meaning of the contract clause of the federal Constitution, where under the state law the resolution is as effective for the intended purpose as an ordinance would be.

3. COURTS—JURISDICTION OF FEDERAL COURT—FEDERAL QUESTION.

That a state Constitution contains a provision prohibiting the passage of any law impairing the obligation of contracts does not deprive a litigant of the right to invoke the similar provision of the federal Constitution in a suit which involves the question of its violation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 821.]

4. STREET RAILROADS—GRANT OF FRANCHISE—CONSTRUCTION OF ORDINANCE.

In 1866 the city of Des Moines passed an ordinance granting to a street railway company and its successors and assigns the right to lay tracks in any of the streets of the city, and to "operate thereon cars in the manner and for the time and upon the conditions hereinafter mentioned and prescribed." A subsequent section provided that the right granted "shall be exclusive for the term of 30 years," and that the city should not, "until after the expiration of said term, grant to or confer upon any person or corporation any privileges which will impair or destroy the rights and privileges herein granted to said company." At that time there was no statute of the state of Iowa specifically conferring on cities the power to grant franchises to street railroad companies, but such grants were afterward legalized by the Legislature, and there is no statute limiting the term for which such grants may be made. At all times until the year 1905 the city in many ways recognized the franchise as in force, and after the expiration of the 30-year term required complainant, which had succeeded to the property and franchise of the original company, to pave streets, and construct new lines at large expense. In 1905 the city council passed a resolution treating complainant as a trespasser, and ordering all of its 70 miles of tracks removed from the streets. *Held*, that the ordinance granted a franchise in perpetuity, its exclusive character only being terminated at the end of the 30 years, and created a contract which the city could not impair; that complainant was entitled to an injunction restraining the enforcement of the resolution on that ground, and also on the further ground that the city was estopped by its acts from insisting upon a different construction of the contract.

In Equity.

N. T. Guernsey, W. L. Read, and George H. Carr, for complainant.
W. H. Bremner, Howard J. Clark, and Wm. H. Baily, for defendant.

McPHERSON, District Judge. This is a case by a bill in equity without a diversity of citizenship. The jurisdiction of the court is challenged, the defendant city insisting that there is no federal question; while the plaintiff contends that its property is sought to be taken without due process of law, and that its contract with the city, as to the duration of its franchise, is sought to be impaired, and will be impaired if the city is not restrained. Jurisdiction is most generally acquired, when acquired at all, in cases between citizens or corporations of different states; but in this case, as both parties are Iowa corporations, jurisdiction cannot thus be acquired. If this court takes jurisdiction, it is by reason of article 3, § 2, of the United States Constitution and the statutes of Congress enacted thereunder. The Constitution in part recites, with reference to the United States courts:

"The judicial power shall extend to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority."

The enactments of Congress conferring jurisdiction are pursuant to the constitutional provision. If both the state and federal courts would have jurisdiction the plaintiff has the election of bringing it in either, and such election is not a subject of criticism. It is a right. And the fact that the other party prefers to have the litigation in a court of another jurisdiction is not a reflection on any court, nor a subject of criticism. No judge will seek to acquire jurisdiction. And no judge with the slightest courage will seek to avoid the responsibilities, to the end that he may lighten his work.

The only possible practical question as to the disputes between these parties as to what court shall enter a decree is as to what court on appeal the case may be carried. If the city is right in its contention that the state district court only can take jurisdiction, then on appeal the Iowa Supreme Court will decide all questions of fact and all questions of law, except questions pertaining to the United States Constitution, which alone will finally be decided by the United States Supreme Court. But if the street railway company is correct in its contention that this court has jurisdiction, then the case can be taken direct to the United States Supreme Court, and that court will determine all questions of fact and all questions of law, including all constitutional questions. But with matters of appeal this court has nothing to do, and they are only referred to because of the arguments. But it is not a question of labor nor responsibility, nor shirking of either, but is a question of jurisdiction, and that depends upon the question of whether there is a "federal question" in the case.

In 1866 Des Moines was a city of about 6,000 people. It had no street cars, and quite likely no other city of the state had. Up to that time there was no statute on the subject. The only statute that could be referred to as at all germane to the subject was section 1064 of the Revision of 1860, which in the most general terms gave city councils

power over the streets. Under that statute, no doubt, the city council assumed authority to pass an enactment in the form of an ordinance of date December 10, 1866, referred to as the Dr. Turner ordinance, and is as follows:

"Section 1. That consent, permission, and authority is hereby given and granted to and duly vested in the Des Moines Street Railway Company, and their successors and assigns, to lay a single or double track for passenger railway lines, with all necessary and convenient tracks for turnouts, side tracks, and switches in, upon, and along all the streets, and such alleys only fronting on which said company have depots, stables or car houses, and over the bridges and such streets in the city of Des Moines, with their present and future extensions and connections, and authority is hereby given said company, their successors and assigns, to keep, maintain, use, and operate thereon railway cars in the manner and for the time, and upon the conditions hereinafter mentioned and prescribed."

Section 2 provides that the cars shall be operated by animal power. Section 3 provides that the same shall be used for carrying passengers and baggage. Sections 4, 5, 6, 7, and 8 are not material to this inquiry. Section 9 provides within what time the first mile shall be completed and in operation. Section 10 which, with section 1, more than all other matters are the subject of this litigation, is as follows:

"Sec. 10. The right herein granted to said company to operate said railway, shall be exclusive for the term of thirty (30) years from the time the first mile of said track is laid and cars running thereon, and the said city of Des Moines shall not, until after the expiration of said term. grant to or confer upon any person or corporation any privileges which will impair or destroy the rights and privileges herein granted to said company."

Section 11 is with reference to building to fair grounds. Section 12 requires annual statements, and is with reference to taxes. Section 13 need not be stated, while section 14 is with reference to acceptance of the terms of the ordinance.

The ordinance was timely accepted, and by January 1st, 1868, sufficient tracks had been constructed and in operation as to be the beginning of the 30 years referred to in section 10. Complainant shows that by assigns, transfers, etc., it is the successor of the company named in the ordinance. The 30-year period referred to in the ordinance expired January 1, 1898, and whether the rights and franchises of the company expired 9 years ago, or the exclusive and monopoly period only, is the real question of the case; the city contending that all rights then ended, and the street car company, that the exclusive period only, with its rights as perpetual in common with such other companies as may desire with the consent of the city to go into business.

The Des Moines Street Railway Company named in the Dr. Turner ordinance operated the lines until 1886, when it sold and conveyed the property, franchise included, to the Des Moines Railroad Company. About that time another company was organized, referred to as "Broad Gauge Company," with a purpose to construct and operate lines by horse power. Litigation ensued between the two companies to which the city was a party. The litigation resulted: (1) The exclusive provision of section 10 of the ordinance of December 10, 1866, was upheld, and the Broad Gauge Company was enjoined from operating. (2) It was held that whether the city under the revision of 1860 had

authority to pass the ordinance of 1866 was not important, as the Legis- lature had since recognized and ratified it. Des Moines Street Railroad Cases, 73 Iowa, 513, 33 N. W. 610, 35 N. W. 602; Des Moines Street Railroad Cases, 74 Iowa, 585, 38 N. W. 496. Thereupon the city granted authority to the Broad Gauge Company to operate by electric power; and the courts held that operating by electric power was not a violation of the exclusive right to operate for 30 years by horse power. Teachout v. Des Moines Street Car Co., 75 Iowa, 722, 38 N. W. 145. The two companies disputed with each other and the city until 1889, when a settlement was effected by a consolidation resulting in the Des Moines Street Railroad purchasing the electric company. Suits were settled and dismissed, the city council adopting a resolution imposing certain conditions, and the company accepting them.

It will be recalled that section 2 of the Turner ordinance of December 10, 1866, required the moving of cars by animal power. But March 8, 1890, the city council amended it by providing that the power used could be electric or other practical motor power. And the terms of that ordinance were accepted by the street car company. Less than two months thereafter the Legislature by chapter 11, p. 19, Acts 23d Gen. Assem., approved April 24, 1890, with a publication clause, legal- ized said ordinances as follows:

"Sec. 2. All ordinances or resolutions of such cities or incorporated towns heretofore enacted granting to any person or company the right to propel its cars by electricity are hereby declared legal and valid."

So that from the foregoing it will be seen that we have a case as though the ordinance of December 10, 1866, was passed under full statutory authority, with section 2 reading that the power shall be electric "or other practical motor power," and as though the Des Moines Street Railroad Company was named in the ordinance.

Still later on complainant herein, by purchase, became the owner, including the franchises, of other lines constructed in adjacent munici- palities, now a part of the city of Des Moines. In 1898 when the 30- year exclusive period of the Turner ordinance expired, complainant had about 40 miles of road, and when the resolution now to be men- tioned was passed, it had about 70 miles of road, all in operation. November 21, 1905, the city council adopted a resolution. The word- ing thereof was the result of several efforts in phrasing. But by passing it, it became the work of the council, and the resolution is as follows:

One "whereas" is that questions have been raised as to the rights of the complainant to maintain its tracks and operate its lines on the streets; and the other "whereas" is that to preserve the rights of the city, and that such questions be speedily determined. Then:

"Be it resolved by the city council of the city of Des Moines that said com- panies be and they are hereby ordered to remove all of their tracks, poles, and wires from the streets, bridges, and public places of the city of Des Moines, and to restore and repair the surface and pavement, where paved, of all of the streets along which they now are operating their lines, and said companies are hereby ordered to commence said removal within twenty-five (25) days after the passage of this resolution.

"Be it further resolved that should the said railway companies fail to commence such removal within the time above specified, the city solicitor

be·and he is hereby instructed to take such action as he shall deem advisable and necessary to secure the enforcement of the above resolution.

"Further resolved that the city clerk serve a copy hereof upon the Des Moines City Railway."

Service was made November 24, 1905, whereupon this action was brought. The complainant protested against this resolution. Complainant has 70 miles of street railway now in operation costing large sums of money, built under the ordinance of 1866. It claims to own this vast property,. and to be operating the same. Whether it has such right or not, it makes such claims, and claims a contract therefor, but a claim denied by the city.

Section 10, art. 1, of the United States Constitution provides: "No state shall pass a law impairing the obligation of contracts." That means that there must be a contract. Whether there is a contract is the controversy herein. There must be an obligation. But that depends in this case as to whether there is a contract. Whether the resolution of November 21, 1905, is a law, is a legal question, affirmed by the company, and denied by the city. And while the constitution says, "No state shall pass a law impairing a contract," all courts and all lawyers agree that the word "state" means that a city or other subdivision or agency of a state cannot be allowed to impair a contract.. And it is also agreed that if the company has the right to own and operate its lines under a contract by ordinance and acceptance thereof, that the city will be impairing such contract, if over the protest of the company, an ordinance is passed terminating such contract.

The evils of the days of the confederation, during and following the War of the Revolution, were in mind when our Constitution was formulated and adopted. The makers of our Constitution believed, as all fair-minded men now believe, that states and cities should observe and have the same regard for contracts, as do individuals of integrity. In those days it was common for states to not only repudiate their contracts, but destroy by legislation the contracts between individuals.. And in a few instances since the adoption of the Constitution states have by legislation attempted this; notably the state of Georgia after granting some lands learned of the unpopularity thereof, and on charges against some of the members of corruption, with some proof tending to sustain the charges, undertook on its own motion by its Legislature to cancel its contract. The case was carried to the Supreme Court, and what Chief Justice Marshall wrote in the case of Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162, has been as a guide from that year (1810) to this.

Of late years the states have but seldom attempted this. But that it is one of the evils of municipal government of the day is a fact known by all who read or are observing. It is· no attack upon the personnel of city governments to say this. It is the system that has brought it about. It too often happens that good men, but scarcely capable of managing small affairs, are given official position in municipal affairs. The result is that no well-defined course or policy is mapped out, and nearly everything done by one administration is sought to be overthrown by the next, regardless of costs, and the loss in expenditure of thousands of dollars of the people's money.

As long as this is mere legislation, under present systems there is no help for it, because in mere legislation, one council cannot bind a succeeding council. One can enact, but the next can repeal. But when the enactment of a council is a valid contract, then the next council cannot repeal. And courts will and must see to it that the contracts are observed, and all talk about the wrongs of the contract, or favor with which the repeal is received, should not move a court. So that if sections 1 and 10 of the ordinance of 1866, as amended, and as legalized by the Legislature, were a contract with complainant's assignors, then such contract cannot be destroyed, nor even impaired by a later enactment of the city council, because all the courts hold, and all lawyers agree, that the word "state" included the word "city" in the Constitution, where it recites: "No state shall pass any law impairing the obligation of contracts." And that an enactment of a city council is a law, of course, is conceded by all, and needs no elaboration.

The complainant contends that it has a perpetual contract. The city denies this, and by an enactment declared the complainant a trespasser on the streets. And that thereby we have a case arising under the Constitution is the holding of this court, and of which I am not in doubt. What is held is that if the federal question is presented in good faith is not merely colorable, that even if there is a well founded difference of opinion as to the merits of the question, but the question is fairly stated in the pleadings; then a United States Court takes jurisdiction, not only over that question, but as to the whole case on all questions. The correct rule cannot better or more clearly be stated than by Justice Brown in the Indianapolis Street Railway Case in 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114.

"It should be borne in mind in this connection that jurisdiction depended upon the allegations of the bill, and not upon the facts as they subsequently turned out to be."

And again:

"All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair."

And this court has jurisdiction of this case regardless of the citizenship of the parties. One need but read the case cited, and the following: Walla Walla v. Water Company, 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Vicksburg Waterworks Company v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808; Railroad v. Mississippi, 102 U. S. 135, 26 L. Ed. 96; Shoshone v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864. These cases, and the cases therein cited, make it wholly unnecessary to multiply citations.

But counsel for the city contend that the resolutions of 1905 declaring complainant's rights at an end were not a law, because in the form of resolutions, and that ordinances only are laws of a city. Congress at every session passes laws in the form of joint resolutions. Many Legislatures often do the same. And with cities it at all times is difficult to determine in which form it should act. That a council can authorize the occupancy of its streets by resolution, as well as by ordinance, had been held by the Iowa Supreme Court. The Mer-

chants' Company v. Railway, 70 Iowa, 105, 28 N. W. 494; Street
Railway v. City of Des Moines, 73 Iowa, 513, 522, 33 N. W. 610, 35
N. W. 602. And that a resolution is a law, when the effort is made to
terminate what is in fact a contract, has been held in the following
cases: Saginaw Gas-Light Co. v. City of Saginaw (C. C., by Judge
Brown) 28 Fed. 529; Vicksburg Waterworks Co. v. Vicksburg, 185
U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808; Electric Co. v. Los Angeles,
194 U. S. 112, 24 Sup. Ct. 586, 48 L. Ed. 896; Riverside Co. v. River-
side (C. C.) 118 Fed. 736; Railroad v. Memphis, 96 Fed. 113, 37 C.
C. A. 410 (by the Circuit Court of Appeals, Sixth Circuit, opinion by
Judge Taft); Vicksburg v. Vicksburg Waterworks Co., 202 U. S.
453, 26 Sup. Ct. 660, 50 L. Ed. 1102.

It would be a strange as well as curious proposition that if there
is a contract under the ordinance of 1866 that it cannot be impaired
by law in the form of an ordinance, but that it can be ridden down by
a resolution by insisting that a resolution is not a law. All agree that,
when the statute requires an ordinance, a resolution will not do, and
that only is what many of the cases cited hold. There is no doubt
about that. And when an ordinance is required, and the ordinance
is enacted, such ordinance cannot be amended or repealed by a
resolution. There is no doubt about that. Cascaden v. Waterloo, 106
Iowa, 673, 77 N. W. 333; Railroad v. Chicago, 174 Ill. 439, 51 N. E.
596; People v. Mount, 186 Ill. 560, 58 N. E. 360. But the answer to
all this is that the ordinance of December 10, 1866, and the amend-
ment thereto need only have been a resolution, and is treated as a reso-
lution. And that though in the form of an ordinance and even invalid
as such, it will be upheld as a resolution. A resolution was all that
was necessary, as held by the Iowa Supreme Court in the cases al-
ready cited.

Finally it is urged by counsel for the city that the case can be de-
cided under the Iowa Constitution, and therefore there is no federal
question. That is the rule as to taking a writ of error to the Supreme
Court; but it is not the test as to jurisdiction of this court. The
contention of the city is because of article 1, section 21 of the Iowa
Constitution: "No law impairing the obligation of a contract shall
ever be passed," and those other provisions much like recitals to be
found in the fourteenth amendment. Thirty-two of the states have
a similar provision, and yet time and again from those states have cases
arisen and been carried through the Supreme Court without a diversity
of citizenship, on federal questions from states, wherein were involved
the contract clause, and of taking property without due process of law.
It must never be forgotten that the Constitution of the United States
according to its own recitals in article 6 is as follows:

"This Constitution and the laws of the United States which shall be made
in pursuance thereof * * * shall be the supreme law of the land."

And when it is not so, this government will be at an end, and we will
again have a confederation. In most cases wherein the United States
circuit courts take jurisdiction such courts and the state courts have
concurrent jurisdiction. But if the contention of defendant's coun-
sel is correct, then in 32 states of this Union United States courts

are ousted of jurisdiction by the action of those states, while in the remaining states the jurisdiction remains. The entire error is in assuming that the resolution of November 21, 1905, is ultra vires, instead of saying that it is a repudiation, and an attempted impairment of a contract. It is a rule of construction that the one will be adopted which the parties themselves have adopted. Von Hostrup v. Madison City, 1 Wall. 291, 17 L. Ed. 538; Chicago v. Sheldon, 9 Wall. 50, 54, 19 L. Ed. 594.

For years the city of Des Moines, as well as the street car company, has construed the Turner ordinance as one granting a perpetual franchise, unless forfeited for just cause. Resolution after resolution has been passed by the council, expressly or impliedly recognizing the Turner ordinance. The council has compelled the company to pave on account of tracks built since 1898, the date the city now says its franchise expired. It now says that the Turner ordinance expired by limitation in 1898, and that since that time the ordinance has been obsolete. And yet in 1900 in codifying the ordinances in force, and omitting obsolete ones, the Turner ordinance was placed in such Code as a live ordinance, and one of present binding force. The city council has directed new lines to be built since 1898, and since that date 30 miles have been built at great cost, and by so doing not only construed the ordinance as the company now contends, but the city ought to be and is estopped from denying the contract, tearing up the tracks, or declaring the company a trespasser. The complainant owns the tracks built by the Turner Company and its successors, and by conveyances of record owns the franchises as well, which were assignable. Railroad v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244; Detroit v. Street Railway, 184 U. S. 368, 395, 22 Sup. Ct. 410, 46 L. Ed. 592; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684.

It is not to be overlooked that section 1064 of the Revision of 1860 under which the Turner ordinance was enacted was much enlarged by section 464 of the Code of 1873. What was very doubtful under the Revision was made clear under the Code of 1873, because the city council was then given express authority to authorize both street and steam railways to occupy the streets; the latter, however, to pay damages to abutting property. But the authority of the city as to both was the same; and no one will claim that a steam road after paying damages is limited as to time in its occupancy. The duration as to time as to both is the same, unless limited by the terms of the ordinance. This is important in connection with the words, "for the time" in section 1 of the Turner ordinance.

The fact that the life of complainant as a corporation is limited to a term of years is not decisive, because it has the right under our general corporation laws to renewal. And if it had not, its assets, including the franchise asset, belong to the stockholders subject to the rights of its mortgage and general creditors. In 1866 there was no specific statutory authority for granting permission to occupy the streets with street car lines. Des Moines then had but about 6,000 people, and it was about as large as any other city of the state; but Dr.

Turner and others had confidence in its growth, and the then city council desired to aid in building up the city by enabling people to reside beyond the business district, so that the ordinance was enacted under a statute giving general control only over the streets. The system was thus inaugurated, and carried on for 14 years, with an expenditure of $200,000, and no profits. Then when profits were in sight the council granted rights to other companies, and the litigation commenced. But the Iowa Legislature by the Code of 1873 gave specific authority to the city councils over the streets as to street railways then and ever so necessary to the people. And since the adoption of the Code of 1873 there have been many recognitions by the city council of what was done in 1866.

Section 2 of that ordinance provides for animal power, later changed to electric power by ordinance, with the consent of the company, and legalized by the Legislature; but the grant is in section 1, and that section provides, which is again noticed, even though a repetition, as follows:

"That consent, permission, and authority is hereby given to and duly vested in the Des Moines Street Railway Company, and their successors and assigns, to lay a single or double track for passenger railway lines, upon, and along all the streets, * * * and over the bridges and such streets in the city of Des Moines, with their present and future extensions, and authority is hereby given said company, their successors and assigns, to keep, maintain, use, and operate thereon cars, in the manner, and for the time, and upon the conditions hereinafter mentioned and prescribed."

"And for the time" calls for construction. Many cases of the highest authority are called to my attention to emphasize the undoubted and most familiar rule that a public grant must be given the construction most favorable to the public, when it is susceptible of two or more constructions. But neither statutes nor ordinances are to be frittered away by construction. Like contracts, they are to be held up by the four corners, examined, and given a fair construction. Let it be kept in mind that for what appeared sufficient reasons the Legislature has from time to time limited the time of several municipal utility corporations and their rights to the streets. But not so with street railway lines. And let it be kept in mind that to prevent the ordinance from being void by creating a perpetual monopoly that the monopoly feature was limited to 30 years of time, now expired. So that it seems to me, and clearly so, the words "and for the time," in section 1, refer to the monopoly feature of section 10. And section 10 creates the monopoly and has reference only to the monopoly. It grants a monopoly absolutely, but limits it to 30 years. But for the monoply feature it was not inserted, and in my opinion it is wholly without reason as to any other feature of the situation. There is no grant of power, right, nor authority of any kind in section 10, except the grant of a monopoly, and that limited to a definite time. Such was the construction placed upon it by eminent and impartial lawyers wholly without interest in early days of the life of this plant, on which money was advanced for the extension of the lines for the use of people desiring homes distant from the business district, and was the construction placed thereon by the law department of the city

in litigation. The construction thus given was in effect that section 10 was not a grant, except for the monopoly for 30 years. And this being so, the words "and for the time" in section 1 are easily understood as referring to the right to use the streets to the exclusion of all other companies for 30 years, and thereafter in competition with other companies.

Questions of rates, or transfers, or taxation are not involved. Nor are questions as to the efficiency of service—that which interests the people more than all else in connection with a street railway system. And with efficient service and reasonable rates the people are content. And with these in mind the Legislature was content, not to allow the monopoly for all time, but to allow one company in common with all others to have a continuing franchise. And when it fails to furnish such service, the remedy is plain. But in the meantime there is a contract that must be observed by the city.

This case is an interesting one, and has been elaborately argued. This opinion, lengthy as it is, would be a volume in size if I were to notice all the authorities cited. While this is not possible, I have noticed all the points of importance. I am of the opinion that this is a case cognizable in equity, and within the jurisdiction of this court. I am of the opinion that the Turner ordinance of December 10, 1866, is still in force, with the exclusive or monopoly feature of section 10 expired by limitation of time, and that the complainant has the right to operate its lines under that ordinance; and that a court of equity should and will enjoin the enforcement of the resolution of November 21, 1905. And there will be a decree for complainant.