## UNITED STATES v. McGEE et al.

### (Circuit Court, W. D. Missouri, W. D. June 12, 1909.)

### No. 3,460.

1. United States (§ 67*)—Contractors' Bonds—Actions—Rights of Creditors Supplying Labor and Materials.

   Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1907, p. 709), requiring bonds given by contractors for government work to contain an additional obligation securing the payment of claims for labor and materials supplied to the contractor, and providing for the enforcement of such obligation, has no relation to actions on such bonds by the United States, and, while labor and material creditors are authorized to intervene in such actions and have their claims adjudicated subject to the prior right of the United States, the government, in commencing such an action, is not required to serve or publish notice to such claimants, nor to bring the suit in the district where the contract was to be performed; such provisions of the act being applicable only to suits brought thereunder.

   [Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

2. United States (§ 67*)—Contractors' Bonds—Actions—Right of Creditors for Labor and Materials to Intervene.

   Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1907, p. 709), which provides that, in an action by the United States on the bond of a contractor for public work, persons having claims for labor or materials supplied to such contractor may intervene and be made parties and have their claims adjudicated subject to the prior claim of the United States, gives them such right only subject to the ordinary rules and practice governing interventions, and such creditor will not be allowed to intervene after the action has been dismissed as to the contractor for want of service and as between the plaintiff and the surety has been fully tried and submitted for decision.

   [Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On Application for Leave to Intervene.

See, also, 171 Fed. 206.

A. S. Van Valkenburgh, U. S. Dist. Atty.

Lowe & Shannon, for defendants.

Karnes, New & Kranthoff, Almon & Andrews, and James Jackson, for interveners.

PHILIPS, District Judge. The Pocohantas Lumber Company et al. have presented an application for leave to intervene in this suit. They claim to be creditors of McGee & Short, the original contractors for the construction of the government work involved in the principal suit. Their demand is based upon materials and labor furnished to said contractors.

While it does not distinctly appear on the face of the application for intervention the dates when such materials and labor were furnished, it is quite apparent from the papers and proceedings in the principal suit that it was not later than May, 1907, as at that time the period extended by the United States to the contractors for the completion of the work expired; whereupon the contract between the United States and the contractors was annulled, and the unfinished part was relet to a new contractor.

The statute (Act Feb. 24, 1905, c. 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1907, p. 709]), under which the contract in question was made, contains alternative provisions respecting the rights of such materialmen and workmen. The first provision gives them the right to intervene and to be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. Such claimants can only share pro rata in any excess of the amount of the bond after the payment of the claim of the government. The next provision is that, if no suit should be brought by the United States within six months from the completion and final settlement of said contract, then such claimants, under conditions prescribed by the statute, may have a right of action in the name of the United States, in the Circuit Court of the United States in the district in which said contract was to be performed and executed. Such action must be brought within one year after the performance and final settlement of said contract, and not later.

In respect to this latter provision, it is to be observed that the independent suit the creditors may bring upon the surety bond "shall not be commenced until after the complete performance of said contract and final settlement thereof." So long as the contract is not completely performed and final settlement thereof made between the contracting parties, no right of independent action accrues to the materialmen and laborers. When that condition exists, and the United States has failed for six months to bring any action on the bond, the creditor may proceed, provided he commence his action within one year from the performance and final settlement of the contract.

So while the contract between the government and McGee & Short was in April, 1907, annulled by the government by reason of the de-

fault of McGee & Short in not performing the work within the prescribed period, as the government was thereto authorized by the fourth paragraph of the contract, there was no settlement within the meaning of the statute between the contracting parties, and there could have been no such final settlement until after the completion of the unfinished work under the new contract therefor with another contractor. The suit by the United States on the bond is to recover for the cost to the United States in completing the unperformed contract. This construction is supported by the ruling in U. S. v. Winkler (C. C.) 162 Fed. 397.

It is therefore to be conceded that when the United States in January, 1909, instituted this suit on the surety bond given by McGee & Short, the creditors of the contractors, having unsatisfied claims for material and labor furnished for the construction of the work, had the right to intervene in said suit; but the statute does not admit of the construction that the provision in the latter part of the section respecting the giving of notice to all known creditors has any reference whatever to the obligation of the United States before it could prosecute its action to final judgment. Said provision has reference only to the duty imposed upon any creditor or creditors who bring an independent action after the failure of the government within six months to sue. This is palpably so for the reason that the pro rata apportionment, where the amount of the bond may be less than the sum of the creditors' claims, applies only to the creditors; and therefore, before any such creditor could take judgment on the bond for his claim, he is required to bring in, by the prescribed notice, the other creditors who are authorized to intervene in such creditor suit, so that the court could ascertain and determine the pro rata distribution of the fund among them.

The provision authorizing the surety to pay into court, for distribution among the claimants and creditors, the full amount of the surety's liability, to wit, the penalty named in the bond, clearly enough has reference only to the claims of such creditors, for it says that this payment into court shall be less than any amount which the surety may have had to pay to the United States by reason of the execution of said bond.

It is to be kept in mind that the statute in question, as its title expresses, was solely for the protection of persons furnishing materials and labor for the construction of public works, prescribing and regulating their right of action and mode of procedure. It does not purport to give the right of action or to regulate the procedure of the government on the contractor's bond. The government is left to proceed in the ordinary way by suit on the bond for its indemnity, just as the government did proceed in this case. The statute only gives to the materialmen and laborers the right to intervene in such suit after it is brought. It does not impose upon the government the duty of giving notice of any kind to such assumed creditors, advising them of such right to intervene. This for the reason that the penalty of the bond stands primarily for the protection of the government, and then for distribution among the creditors of any remaining part of the penalty after the satisfaction of the government's demand.

It is suggested in argument that the last proviso of the section of the statute in question, "that in all suits instituted under the provisions of this act, such personal notice of the pendency of such suits informing them of their right to intervene as the court may order; shall be given to all known creditors," etc., applies also to any suit instituted by the government on the bond. It is to be observed, however, that the language is, "all suits instituted under the provisions of this act," which clearly enough, in my opinion, has reference to creditor suits which alone are authorized by the act to be brought, and has no reference to a suit brought by the government on the bond. It does not derive the authority therefor from this statute.

The government proceeded regularly in the institution of its suit on the bond. The suit was brought in January, 1909, returnable to and triable at the present term of court, which began on the fourth Monday in April. The suit was properly brought in this district on the bond, as the principals in the bond resided at Kansas City at the time the bond was given and the contract made, as appears on the very face of the papers. They were adjudged bankrupt in the United States District Court of this district, as this was the place of their residence, and here the arrangement was made with the local agency of the surety company for the execution of the bond. While personal service was not had upon the principals in the bond, they not being found in the district, service was had upon the surety company, which entered its appearance and defended on the merits. The applicants for intervention had no reason to assume that the government would bring suit on this bond in the state of Alabama, where the work was done.

On the issues joined between the United States and the surety company, the case came on regularly for trial on the 7th day of May, of the present term, when the suit as to the principals in the bond was dismissed. By written stipulation between the parties, trial by jury was waived, and the cause was submitted to the court for final hearing. The evidence was taken, and the cause was argued by the respective counsel, and finally submitted to the court on the 7th day of May, and by the court taken under advisement. The court had prepared its opinion, reaching a final conclusion on the issues of law and fact therein, and was ready and intended to hand down the opinion and enter final judgment at 10 o'clock a. m., June 1, 1909, when the application for leave to intervene was first presented, which was then and there objected to by the defendant company.

The question to be decided is: Shall this intervention at this stage of the proceeding be allowed by the court? The statute is that the parties "shall have the right to intervene and be made a party to the (any) action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject however, to the priority of the claim and judgment of the United States." This language of the statute is but an expression of the usual provision respecting an intervention, "the right to intervene and be made a party to the action." The intervener comes into a pending action with the right to establish his claim against the contractor, with the consequent and unquestioned right as an intervener to question the amount of the recovery of the

United States. The amount of the bond is $20,000. The amount of the judgment prayed for by the United States is $8,629, with interest at 6 per cent. from the 1st day of December, 1908, and costs. There was a sharp issue presented on the hearing of this suit as to the liability of the defendant respecting an item of $1,159.10 for superintendence and inspection.

It is quite clear to my mind that under this statute, which provides that the intervener may become a party to the action, the rights of the parties would all be determined in one judgment fixing the rights of the plaintiff and the rights of the interveners as between them and the plaintiff and the defendant. Had the intervener come into the action in time, the court would not have proceeded to trial until all the parties thereto were ready for trial, and the whole case would have been submitted to the same jury for hearing, or to the court sitting as a jury on stipulation waiving trial to a jury.

The situation of this case is nowise different from what it would have been had it been tried to a jury. Would a party be permitted to come in and intervene in the action after the case had been tried out between the plaintiff and the defendant to the original suit, argued, and submitted to the jury, and while the jury were considering their verdict in the case? The answer undoubtedly would be, "No." It seems to be the generally recognized rule, under all statutes and systems of legal procedure, that a party claiming an interest in the subject-matter may intervene at any time, "if it be done before the final submission of the cause, provided it does not delay the principal suit to the prejudice of others, and he cannot be permitted to retard the principal suit." Eccles v. Hill, 13 Tex. 67; Smalley v. Taylor, 33 Tex. 669; Ragland v. Wisrock, 61 Tex. 397; Van Gordon v. Ormsby Bros. & Co., 55 Iowa, 664, 8 N. W. 625; Teachout v. D. M. B. G. Ry., 75 Iowa, 722, 38 N. W. 145; Gains v. Page, Bacon & Co., 15 La. Ann. 108.

If these applicants are permitted to intervene, the issues will have to be made up between the parties. It is stated in open court and conceded that it will necessitate the taking of testimony by depositions of witnesses in the state of Alabama, where this work was done and materials furnished, resulting in the delay of the verdict and judgment in the pending suit for an indefinite length of time.

Again, the contractors are not before the court. No service having been made upon them, the petition as to them, upon motion of the plaintiff, was dismissed. Before the interveners can take any judgment against the surety on the bond, they must establish the amount due them from the contractors. But I do not deem it essential to decide here whether or not the contractors should be before the court. But what I do decide is that, after the action had been dismissed by the plaintiff as to the contractors, the principals in the bond, and the cause had gone to trial, fully heard between the parties to the suit and submitted to the court sitting as a jury for its verdict, it was too late to admit the applicants to intervene, as much so as if the case had been tried to a jury and this application was presented just before the jury came in with their verdict.

It is true that the amount of the claims of the applicants is less than the penal sum of the bond; but if this case is reopened for the interposition of interveners, where is it to end? Another claimant since this application was presented has appeared before the court with another like claim and wishes to intervene. How many more like claimants exist, having as much right as the present applicant to come in, is not known. No notice has been given to other creditors to shut them out. The aggregate sum claimed by the newcomers might exceed the residue of the penal sum after the satisfaction of the government's claim. In such contingency the creditors would be interested in reducing the amount of the government's recovery as much as possible, thus rendering futile the trial of the case already had as between the government and the surety on the bond. There is no precedent for an intervention under such circumstances, and I am unwilling to make a bad one. The situation presents a fit application of the maxim: "Vigilantibus et non dormientibus jura subveniunt."

The application is denied.