BAKER CONTRACT CO. et al. v. UNITED STATES, for Use of PENNOCK et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1913.)

No. 1,120.

1. COURTS (§ 269*)—PUBLIC WORK—CONTRACTOR'S BOND—FEDERAL JURISDICTION—DISTRICT.

Act Cong. Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1905, p. 493), amending Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), authorizing a suit in the name of the United States by laborers and materialmen on the bond of the public contractor, and providing that the action shall be brought in the district in which the contract was to be performed, "and not elsewhere," superseded as to such action the provision of General Jurisdiction Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), requiring actions in which jurisdiction depends on diversity of citizenship to be brought in the district in which the plaintiff or defendant resides. so that, in an action on such a bond, the court of the district where the contract was to be performed had jurisdiction to issue process for the service in another district or districts on nonresident defendants.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** APPEAL AND ERROR (§ 257*)—EXCEPTIONS—ASSIGNMENT OF ERROR—NECESSITY.

An objection that the summons was fatally defective for failure to specify a return day could not be reviewed on appeal, in the absence of an exception to the court's overruling the same and an assignment of error based thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1494–1497; Dec. Dig. § 257.*]

**3.** UNITED STATES (§ 67*)—PUBLIC IMPROVEMENT—CONTRACTOR'S BOND—ACTION—CONDITION PRECEDENT—LIMITATIONS.

Act. Cong. Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1905, p. 493), amending Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), provides that, if no suit is brought by the United States within six months after the completion and final settlement of a contract for a public improvement, the laborers or materialmen on application shall be authorized to sue on the contractor's bond in the name of the United States at any time thereafter, and within one year after the performance and final settlement of the contract, and not later. *Held*, that the provision requiring the materialmen's action to be brought within a year was not a limitation of the remedy, but was a condition of the right to sue; and hence a failure to comply therewith, could be availed of as a defense, though not specially pleaded.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Action by the United States of America, for the use of Joseph W. Pennock and others, against the Baker Contract Company and sureties on the bond, pursuant to a contract for the construction of public works. Judgment for plaintiffs, and defendants bring error. Affirmed in part, and reversed in part.

This is an action of debt, instituted in the United States District Court for the Northern District of West Virginia by the United States of America, in behalf of and for the use of Joseph W. Pennock, against the Baker Contract Company, a corporation, Philip M. Pfiel, and Geo. E. Lorch. The action is based upon a contractor's bond given by the Baker Contract Company, with the said Pfiel and Lorch as sureties, in the penal sum of $75,000, payable to the United States of America. In said bond it appears that the Baker Contract Company had entered into a contract of May 18, 1905, for building dam No. 18 on the Ohio river, which contained the usual conditions as to the carrying out of said contract, and was also conditioned for the prompt and full payment to all persons supplying the said Baker Contract Company with labor or materials in the prosecution of the work provided for in said contract. The said bond was given under the terms of the act of Congress passed February 24, 1905 (33 Stat. 811, c. 778), amending the act of August 13, 1894 (28 Stat. 278, c. 280 [U. S. Comp. St. 1901, p. 2523]), providing for bond of contractors for public buildings or works, and defining the rights of persons furnishing labor and material, and the remedies on bonds and proceedings in actions thereon, as found in the Supplement of 1905, U. S. Compiled Statutes, page 493. The declaration alleges the execution of the bond, that the Baker Contract Company entered upon the building of the dam mentioned in said contract, and that the relator, Joseph W. Pennock, sold and delivered to the said Baker Contract Company certain lumber for use in the prosecution of said work and filed an itemized statement for the same. The declaration contains the usual allegations common in suits upon bond with conditions, and alleges the full performance of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said contract by the receiver of the Baker Contract Company and the final settlement with the United States February 11, 1910, and that six months had elapsed since the completion and final settlement of said contract, and that no suit had been brought by the United States within said six months against the said Baker Contract Company and the sureties on said bond. These allegations are made pursuant to the requirements of the act of Congress of February 24, 1905, as giving the right of action to the plaintiff as a person who had furnished material for the prosecution of said work. The action was brought in the Northern district of West Virginia, because the act provides that such suit shall be brought in the district in which the contract was to be performed and executed, and not elsewhere. The contract was to be performed in the district in which the suit was brought. The process, as appears by the returns of the officers, was served in the Western district of Pennsylvania.

On November 7, 1910, the defendant Joseph M. Pfiel filed his demurrer to the declaration, and at the same time filed his pleas Nos. 1 and 2, being the plea of nil debet and plea of performance. From time to time other firms and persons who had furnished material or rendered services to the Baker Contract Company for the prosecution of such work were permitted to file their petitions and present their claims in the action, under the terms of the act of Congress of February 24, 1905, which provides that only one action shall be brought, and any creditor may file his claim in said action and be made a party thereto. On the 13th day of January, 1911, the defendant George E. Lorch appeared by attorney, and appeared specially for the purpose of moving to quash the summons, for the reason, as claimed by the defendant, that said summons was illegally and irregularly issued and directed to the marshal of the Western district of Pennsylvania, and illegally served and returned by said marshal. The motion, being heard, was overruled. Lorch then demurred to the declaration, and the demurrer of Lorch and the demurrers previously entered by Pfiel, being argued, were overruled.

One of the objections raised by the demurrer was that the Colonial Trust Company, receiver of Baker Contract Company, had been made a defendant to the action. On the overruling of the demurrers, counsel appeared for the Colonial Trust Company, and moved to dismiss the action as to it, claiming misjoinder of parties defendant. The court sustained this motion, and dismissed the Colonial Trust Company from further appearance in the cause.

On the 14th day of June, 1911, an order was entered referring the case to Abijah Hayes as master commissioner, to state an account between the relator and the defendants, and between the intervening petitioners and the defendants. This order was entered in the action under a special provision relating to actions at law, found in Code W. Va. 1906, c. 129, § 10: "At law in any case in which it may be deemed necessary, the court may direct any such commissioner or other competent person, either before or at the time of trial, to take and state an account between the parties, which account, when thus stated, shall be deemed prima facie correct, and may be given in evidence to the court or jury trying the case, and the commissioner or other person shall be allowed for such services the same fees that would be allowed a commissioner for similar services, to be taxed in the bill of costs."

After entering said order of the 14th of June, 1911, and being at the same term of court at which said order of reference was entered, and before the execution of said order of reference, the Parkersburg & Marietta Sand Company filed its petition asking the permission to intervene and file its claim in the said action, and the order allowing it to do so was entered on said 21st day of June, 1911.

There was the taking of evidence on various claims by the said Abijah Hayes, master commissioner, and on the 5th day of January, 1912, he filed his report. It is unnecessary for us to refer to the action of the commissioner as to other claims, but as to the claim of Parkersburg & Marietta Sand Company the said commissioner found against the claim of the said company and refused to allow said claim.

On the 10th day of January, 1912, the exception of the Parkersburg & Marietta Sand Company to the master's report was filed. Upon a hearing

of them the court sustained said exceptions as to that portion of said report which found against the right of Parkersburg & Marietta Sand Company to file its petition and prove its claim in said action, and permission was given to the Parkersburg & Marietta Sand Company to offer the necessary proof and evidence to sustain its claim set up in its petition.

On the 20th day of January, 1912, there was a trial of the action and of the several claims which had been filed in the action, under the said act of Congress, before a jury, and a verdict rendered, and the jury brought in their verdict, making a finding as to said several claims, and as to the Parkersburg & Marietta Sand Company the jury found in its favor the sum of $1,422.22, the debt in the petition of intervention mentioned, and the court rendered its judgment in accordance with said verdict, and as to the claim of the Parkersburg & Marietta Sand Company it was that the United States of America, for the use of the Parkersburg & Marietta Sand Company, a corporation, do have and recover of and from the defendants, the Baker Contract Company, a corporation, Philip M. Pfiel, and George E. Lorch, the sum of $4,422.22 with interest and costs, and provided that separate executions might issue on said judgments for the benefit of the respective plaintiffs. The case comes here on writ of error.

William Beard, of Parkersburg, W. Va., for plaintiffs in error.

Thomas Coleman, of Parkersburg, W. Va. (Ralph L. Smith, of Pittsburgh, Pa., and Geo. P. Chase, Dorr Casto, C. D. Forrer, H. P. Camden, and C. D. Merrick, all of Parkersburg, W. Va., on the briefs), for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The assignments of error filed by counsel for the defendants below are numerous. However, those relied upon are grouped under No. 1, as follows:

"The said summons, being directed to the marshal of the Western district of Pennsylvania and served and returned by said marshal, was without warrant of law for the issuance and service of said writ.

"The clerk of the then Circuit Court of the United States for the Northern District of West Virginia was without authority of law to issue process of summons to commence said action and to direct the same to the marshal of the Western district of Pennsylvania.

"The marshal of the Western district of Pennsylvania was without authority of law to serve and make return of process issuing from the Circuit Court of the United States for the Northern District of West Virginia."

[1] Counsel for defendants insist that the summons was illegal and irregular, inasmuch as it was issued and directed to the marshal of the Western district of Pennsylvania, and, being served and returned by the marshal of that district, such service was without warrant of law.

The act of Congress of February 24, 1905, being amendatory of the Act of August 13, 1894, among other things, provides:

" * * * If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified

copy of said contract and bond. upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution. * * * "

It will be observed that jurisdiction is conferred upon the Circuit Court of the district where the work is to be performed "*and not elsewhere.*" It was the obvious purpose of this act to afford an effective remedy, and thus save harmless laborers and materialmen engaged in work of this character. Its first provision is that a suit may not be brought by any creditors upon the bonds of the contractor until after there is a complete performance of the contract, and such suit must be instituted within one year after the complete performance and settlement of the same. The second proviso is to the effect that, where any one of such creditors brings a suit, only one suit shall be brought, and that other creditors may file their claims and be made parties to such suit within one year from the completion of the contract. The third proviso is that personal notice shall be given of the pendency of such suit to all creditors, notifying them of their right to intervene, and also, in addition thereto, notice by publication, etc.

The act plainly provides that actions of this character shall be brought in the district in which the contract was performed and executed "*and* (as we have stated) *not elsewhere.*" If it were otherwise, it would be a physical impossibility to adjust and settle differences arising out of the performance of contracts of this nature. It not infrequently occurs that contracts of this kind are awarded to those residing in states other than the one in which the work is to be performed, and, under the law as it existed prior to this enactment, parties performing labor and furnishing materials were greatly embarrassed in cases where they were forced to rely upon the settlement and adjustment of their differences by a trial of the same in the courts. It is obvious that it was to remedy this defect in the enforcement of the rights of individuals that Congress passed the statute upon which this suit was based.

The Supreme Court of the United States has recently passed upon this question in the case of United States v. Congress Construction Co., 222 U. S. 199, 32 Sup. Ct. 44, 56 L. Ed. 163. In that case suit was brought in the Circuit Court of the district whereof the defendants were inhabitants, which, as appeared on the face of the declaration, was not the district in which the contract was to be performed. The subcontractors intervened, and asked to have their claims adjudicated and judgment rendered thereon. The principal in the bond did not appear, but the sureties appeared specially, and interposed pleas to the jurisdiction, upon the ground that under the statute, conformably to which the bond was given, power to entertain the action was vested exclusively in the Circuit Court of the district wherein the contract was to be performed. The pleas were sustained, and the action dismissed for want of jurisdiction. The Supreme Court, in reversing the judgment below, said:

"Whether or not, under the act of 1894, as amended in 1905, power to entertain the action was vested exclusively in the Circuit Court of the district wherein the contract was to be performed, is the question which was presented to the court below and answered in the affirmative; and the correctness of that answer turns upon the nature of the action and the provisions of the statute. According to the declaration, the contract for the construction of the building had been satisfactorily performed, full payment therefor had been made to the contractor, the conditions of the bond had been breached only by his failure to pay designated subcontractors for labor and materials used in the construction of the building, and the object sought to be attained was the adjudication and enforcement of those demands, unaccompanied by any pecuniary demand of the United States. Manifestly, therefore, the action, although brought by the United States, was essentially one in behalf of the subcontractors, and the respective interests of the United States and the subcontractors therein were in no wise different from what they would have been, had the action been brought in the name of the United States by the subcontractors for the use and benefit of the latter. The statute, whilst authorizing persons holding unpaid demands for labor or materials to bring such an action in the name of the United States, expressly requires that it be brought 'in the Circuit Court of the United States in the district in which said contract is to be performed and executed, irrespective of the amount in controversy, *and not elsewhere*,' and also provides that only one such action shall be brought, and that it shall be so instituted and conducted, in point of notice and otherwise, that all demands of that class may be adjudicated therein and included in a single recovery. Considering the purpose of the statute, as manifested in these provisions, we think the restriction respecting the place of suit was intended to apply, and does apply, to all actions brought in the name of the United States for the purpose only of securing an adjudication and enforcement of demands for labor and materials, whether instituted by the United States or the creditors themselves. The reasons for the restriction are as applicable in the one instance as in the other, and it is difficult to believe that it was intended that it should be less potent when the United States acts for the creditors than when they act for themselves. The contention to the contrary is rested largely upon the supposition that, in instances like the present, where the defendants, or some of them, are inhabitants of another district, there is an insuperable barrier to the maintenance of the action in the district wherein the contract was to be performed. But this supposition is a mistaken one, for the provision restricting the place of suit operates pro tanto to displace the provision upon that subject in the General Jurisdictional Act (25 Stat. 433, c. 866, § 1 [U. S. Comp. St. 1901, p. 508]), and amply authorizes the Circuit Court in the district wherein the action is required to be brought to obtain jurisdiction of the persons of the defendants through the service upon them of its process in whatever district they may be found."

This decision removes all doubts as to the true meaning and intent of this statute. Such being the case, we deem it unnecessary to discuss this point further than to say that the ruling of the lower court as respects this question was eminently proper.

[2] It is insisted by counsel that a motion was made in the court below to quash the summons in this case for the reason that:

"The summons commencing the action was defective, in that it had no return day; the defendants were summoned to appear at rules to be held in the clerk's office of said court on the first Monday in ——— next, to answer," etc.

We fail to find anything in the assignments of error to justify this contention. We find no exception in the record to the ruling of the court as respects this point; nor do we find any assignment of error upon which to base the contention of counsel for the defendant.

[3] There is another assignment of error which relates solely to the judgment of the Parkersburg & Marietta Sand Company. The defendant says that the fact that the Sand Company's petition—

"* * * was not filed until after the year allowed by the act of Congress upon which the right to sue on the bond is given is certainly fatal to its right to have judgment, and the court erred in sustaining its exception to the special master's report, holding that it was not for this reason entitled to have a judgment for its claim."

That this claim was not filed within the time required by the statute is not controverted, but it is insisted by counsel for the Sand Company that, inasmuch as the statute of limitation was not specially pleaded, the defendants cannot avail themselves of this defense. However, the special master refused to allow this claim, and assigned the following reason for his failure so to do:

"That the limitation must be specially pleaded is undoubtedly the law as applied to general statutes of limitation, but your commissioner's interpretation of the law applying to such statutes as the one authorizing this action, wherein the right of action is created and the limitation fixed therefor, is that the limitation is a condition attached to the right to sue at all, and the action must be pursued within the limitation, or the right of action and the remedy are both lost, and such limitation need not be pleaded specially."

This conclusion of the master was on exception reversed, and to this action of the court below our attention is called.

The Circuit Court of Appeals for the Eighth Circuit, in the case of United States, to the Use of Gibson Lumber Co., v. Boomer, 183 Fed. 726, 106 C. C. A. 164, held that the limitation is of the liability itself, and not of the remedy; that it is a condition attached to the right to sue at all; and that time has been made of the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statute, and the limitation of the remedy is therefore to be treated as a limitation to the right. It has also been held by the Circuit Court of Appeals for the Third Circuit that the defense that the suit was prematurely brought need not be specially pleaded. It is available under the general issue. Stitzer v. United States, 182 Fed. 513, 105 C. C. A. 51.

There are two district court decisions to the contrary. One, United States, to the Use of Vaughan, v. Stitzer, 179 Fed. 567, was the case which was reversed in Stitzer v. United States, 182 Fed. 513, 105 C. C. A. 51, above cited. The other was United States v. United Surety Co., 192 Fed. 992, in which the decision was by Judge Van Fleet in the Northern district of California. He does not appear to have had his attention called to the Circuit Court of Appeals decisions to the contrary.

In the case of Stitzer et al. v. United States, to the Use of Vaughan, 182 Fed. 513, 105 C. C. A. 51, the Circuit Court of Appeals for the Third Circuit said:

"The learned judge below, in his opinion in denying the motion for judgment non obstante veredicto, said: 'And for the purpose of this case it may also be assumed—but without deciding the point—that an independent action by the subcontractor should have been deferred until six months had elapsed from July 20th, the date of final settlement. But it still remains to inquire whether the defendants are in a position to take advantage of this

defect in procedure, and in my opinion their objection should not be allowed to prevail. The defendants are setting up what is essentially a statute of limitation. It differs only from the ordinary statutes in the unessential particular that by it a time is fixed before which suit may not be brought, while by their provisions a time is fixed after which such action may not be entertained. But it is well settled that the defendant cannot take advantage of a statute of limitations unless in some way it is formally set up as a defense.' In this we think he erred. He treated the statute in question as a statute of limitation, and concluded that because it had not been pleaded it had been waived. He cites authorities to show, what is undoubtedly the law, that a failure to plead such a statute constitutes a waiver thereof, but none to show that a statute, like the one in question, is in any sense a statute of limitation, or one which like that statute must be pleaded. To call the statute in question a limitation is not only a misnomer, but an absolute misconception of the purpose of the act, which was to give any person or persons, supplying labor and materials to a contractor with the government, a right of action where before none existed. The act was not intended to, and does not, bar any cause of action, but rather creates one. The lapse of six months was a condition precedent to the plaintiff's right to sue. In other words, a conditional cause of action only was conferred. Such cause of action was created by the statute, and must be instituted pursuant to the terms and conditions of the statute, and not otherwise. No party prior to the expiration of six months from the completion and final settlement of a contract, except the United States, was thereby authorized to sue upon the bond. Whether during that period the United States does or does not institute a suit is a matter of entire indifference, in so far as the proper construction of the statute is concerned. It is sufficient for our purpose to say that during that period, and all of it, the only right of action on a bond given under that statute is vested exclusively in the United States. The statute has received substantially the same construction that we have given it, in the following cases: United States v. Winkler (C. C.) 162 Fed. 397; Title Guaranty & Trust Co. v. Puget Sound Engine Works, 163 Fed. 169, 89 C. C. A. 618; United States v. McGee et al. (C. C.) 171 Fed. 209."

After a careful consideration of this statute, creating—as it does—a right of action, and at the same time fixing a limitation as to the time within which suit shall be instituted, we are of the opinion that such limitation is a condition precedent to the right to institute such action, which must be complied with in order to enable one to institute an action pursuant thereto. In other words, a right of action is granted provided suit is instituted within one year "after the performance and final settlement of said contract and not later." It appearing that the Parkersburg & Marietta Sand Company has failed to comply with this requirement, we are of the opinion that the right of action and the remedy are both lost, and that the defendant is not required to plead such limitation specially as a defense in order to defeat the complainant's right to recover. It follows that the court erred in sustaining the exception to the master's report as respects this question.

The Sand Company urged below, and here urges, that it was not barred by the limitation, because the notice required to be given to other creditors, informing them of the pendency of such suit, had not been given in the precise manner required by the statute. The purpose of this proviso is evidently to prevent a creditor or creditors instituting suit from securing to themselves an unfair preference over other creditors in cases where the penalty of the bond is not sufficient to satisfy all claims against the contractor. What rights a creditor, who had lost by failure of the parties instituting suit to give notice, would

have as against those responsible for such failure, need not be here considered. It is sufficient to say that in our judgment the proviso does not extend the time during which a creditor can make claim against the surety.

It follows from what has been said that the judgment in favor of all the creditors, except the Parkersburg & Marietta Sand Company, should be affirmed, and the judgment in its favor should be reversed.