**UNITED STATES for Use and Benefit of LANCASTER IRON WORKS, Inc., et al. (WILKINS et al., Interveners) v. HAMPTON ROADS SHIPBUILDING CORPORATION et al.**

**No. 3673.**

Circuit Court of Appeals, Fourth Circuit.

Oct. 2, 1934.

Tazewell Taylor, Jr., of Norfolk, Va. (Charles H. Le Fevre, of Washington, D. C., Robert R. Beaton, of Portsmouth, Va., J. Sydney Smith, Jr., of Norfolk, Va., Edward Ash, of New York City, and Alan W. Carrick, of Newark, N. J., on the brief), for appellants.

Leigh D. Williams, of Norfolk, Va., for appellees.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an appeal from an order dismissing, as having been prematurely brought, an action instituted under the Hurd Act, 40 USCA § 270, on the bond of a contractor with the government. The action was instituted, not by the government, but by persons who had furnished materials to the contractor; and the sole question presented is whether, upon the facts as alleged, there had been a complete performance and final settlement of the contract within the meaning of the statute. The facts are as follows:

On April 13, 1931, the Hampton Roads Shipbuilding Corporation entered into a contract with the United States for the construction of a vessel, to be used as a lighthouse tender, at the price of $334,900, and gave bond for the performance of the contract with the Home Indemnity Company as surety. On June 20, 1932, the Commissioner of Lighthouses gave the following notice to the shipbuilding corporation, which was

in default under the contract, viz.: "You are advised that in accordance with article 9 your right to proceed with the work of constructing the tender is hereby terminated as of this date, you and your surety to remain liable for any excess cost to the government due to failure to complete the contract." The ninth article of the contract under which this notice was given provided that, upon default of the contractor, the government might "terminate his right to proceed with the work," that in such event the government might "take over the work and prosecute same to completion by contract, or otherwise," and that the contractor and his surety should be liable to the government "for any excess cost occasioned the government thereby."

On July 22, 1932, the United States entered into a contract with the Pusey & Jones Corporation for the construction of the vessel which the shipbuilding corporation had failed to construct; and the certificate of the Commissioner of Lighthouses awarding the Pusey & Jones contract states that it was entered into in accordance with article 9 of the contract of April 13, 1931, with the shipbuilding corporation. One of the provisions of the Pusey & Jones contract is that the contractor will undertake to use, so far as practicable in carrying out the work under the contract, material and equipment paid for by the government under the shipbuilding corporation's contract.

So far as appears, no vessel has ever been completed and delivered to the government, and there has been no final determination by any government official of the amount which the government is finally bound to pay or entitled to receive under the contract with the shipbuilding corporation. The use plaintiffs contend, however, that there has been a complete performance and final settlement under that contract by reason of the notice given the shipbuilding corporation and of the fact that the contract with the Pusey & Jones Corporation calls for the payment by the government of a sum less than the balance due by it under the contract with the shipbuilding corporation. The facts with respect to this are that, at the time of the notice to the shipbuilding corporation, it had been paid only $100,470 on the contract price of $334,900, leaving a balance of $234,430, whereas the contract for completion of the vessel was taken by Pusey & Jones Corporation for $214,500. On January 19 and February 1, 1933, one of the use plaintiffs made inquiry of the Comptroller General of the United States as to date of final settle-

ment under the contract, and was informed that "there was no necessity for the United States to state an account against the Hampton Roads Shipbuilding Corporation and its surety and proceeding to collect any balance due from that company for the reason, as stated, that the completion contract was let for less than the unpaid balance under the terminated contract." Later, in reply to a letter of counsel for the indemnity company as to whether this was to be construed as meaning that the government had no further claim against the surety, the Comptroller General refused to take this position, saying that the matter was one for judicial determination. The Commissioner of Lighthouses, however, in a letter of July 14, 1933, after reviewing the facts relating to the two contracts, took the very definite position that there had been no completion of performance under the contract or final settlement thereunder, saying:

"The payments aggregating $100,470 made to the Hampton Roads Shipbuilding Corporation by the Government represented $\frac{3}{4}$ of the amount earned by the Hampton Roads Shipbuilding Corporation under its contract with the Government as the contract provided for a retention of 25% of the amount earned until after delivery and conditional acceptance of the vessel. The amount so retained is $33,490.

"There has not been at the present time any determination by the government as to what part, if any, of this retained balance should be paid to the Hampton Roads Shipbuilding Corporation. The contract with Pusey and Jones Corporation has not yet been completed. When the contract has been completed and the boat has been delivered to the government, it will have sixty days after such delivery within which to test the boat. Probably after such test has been made the government will make final settlement with Pusey and Jones Corporation. Until the boat has been completed, tested and accepted by the government and final settlement has been made with Pusey and Jones Corporation, the government will know what amount, if any, will be payable to Hampton Roads Shipbuilding Corporation.

"$19,930 is the amount by which the cost to the government, had the Hampton Roads Shipbuilding Corporation completed the contract satisfactorily, exceeds the contract price with Pusey and Jones Corporation. However, it cannot be said at this time that this difference is necessarily the amount due Hampton Roads Shipbuilding Corporation. The government has not yet received from

Pusey and Jones Corporation a boat which conforms to the contract requirements, and there has not yet been a final determination of the amount due Pusey and Jones Corporation. Until then it cannot be known whether the construction of the boat by Pusey and Jones Corporation for the government will cost the government more than its contract price with Pusey and Jones Corporation.

"Moreover, there are certain other charges which must be taken into consideration as possible deductions from the amount of $19,930 in order to determine what amount, if any, shall be paid the Hampton Roads Shipbuilding Corporation by the United States. One such charge is the expense incurred by the government for the employment of an inspector to inspect the work as it progresses at the site where the boat is being constructed. This charge will be for such inspection expenses as have been incurred after the date fixed in the contract with Hampton Roads Shipbuilding Corporation for completion of the boat by it. As the boat has not yet been completed by Pusey and Jones Corporation, it is not at this time known what this inspection charge will amount to.

"Another charge which must be deducted from said amount is $636.50, representing the charge for transportation of the boilers and machinery from Portsmouth to Wilmington where the boat is being constructed by Pusey and Jones Corporation. Whether there will be other charges which the government is entitled to deduct in computing the amount, if any, due Hampton Roads Shipbuilding Corporation is not known at the present time."

We think that this statement by the Commissioner of Lighthouses shows conclusively that there has been neither complete performance of the contract nor final settlement thereof within the meaning of the statute. The fact that Pusey & Jones entered into a contract for the completion of the vessel for less than the balance due the Shipbuilding Corporation does not mean that the contract of the latter has been completely performed, or that there has been a "final determination by the proper governmental authority of the amount which the government is finally bound to pay or entitled to receive under the contract," which is what is meant by "final settlement" as used in the statute. Globe Indemnity Co. v. U. S., 291 U. S. 476, 54 S. Ct. 499, 78 L. Ed. 924; Illinois Surety Co. v. U. S., 240 U. S. 214,

36 S. Ct. 321, 60 L. Ed. 609; Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co. (C. C. A. 4th) 57 F.(2d) 995; U. S., to Use of Stallings v. Starr (C. C. A. 4th) 20 F.(2d) 803, 806.

It is true that it has been said that, where the government has clearly indicated that it has no further claim against the surety, a final settlement within the purview of the act has taken place. U. S. v. Title Guaranty & Surety Co. (C. C. A. 7th) 254 F. 958, 962; Robinson v. U. S. (C. C. A. 2d) 251 F. 461, 466; Consolidated Indemnity & Ins. Co. v. W. A. Smoot & Co., supra. But this language has reference to a settlement determining the rights of the government, in which clear indication is given that it will not attempt to hold the surety. Here there has been no such settlement and nothing done to indicate that the government will not look to the surety for reimbursement for loss, if this should become necessary. If there should be default on the part of Pusey & Jones and the government should be put to additional expense in securing the completion of the vessel which the shipbuilding corporation contracted to build, the government would have the right to look to the bond here sued on to indemnify it from loss, and it has done nothing to preclude it from asserting this right.

The argument of the use plaintiffs is that, upon the execution of the contract with Pusey & Jones, the account between the shipbuilding corporation and the government was "stated, fixed and determined"; but the right of the use plaintiffs to sue under the statute does not arise until six months after the "completion and final settlement" of the "contract." 40 USCA § 270. As the contract with Pusey & Jones was entered into pursuant to the ninth article of the shipbuilding corporation's contract, there can be no "completion" of the last-named contract until the vessel is completed in accordance with the terms thereof; and, under the authorities above cited, there can be no "final settlement" of the contract until there has been a final determination of the amount which the government is finally bound to pay or entitled to receive thereunder. See, also, U. S. v. Winkler (C. C.) 162 F. 397, and U. S. v. McGee (C. C.) 171 F. 209.

There was no error in dismissing the action as having been prematurely brought, and the judgment dismissing same will be affirmed.

Affirmed.