UNITED STATES ex rel. and to Use of PEN MAR CO., Inc., et al. v. J. L. ROBINSON CONST. CO. et al.

No. 5317.

District Court, D. Maryland.

Oct. 17, 1934.

Kenneth C. Proctor and France, McLanahan & Rouzer, all of Baltimore, Md., for Pen Mar Co.

Irving B. Grandberg, of Baltimore, Md., for receivers of Gypsum Co.

Harry O. Levin, of Baltimore, Md., for Robinson Const. Co. and General Reinsurance Co.

William F. Kelly and P. J. J. Nicolaides, both of Washington, D. C., for General Reinsurance Co.

CHESNUT, District Judge.

This is a suit under the Hurd Act (USC, title 40, § 270 [40 USCA § 270]). The use-plaintiffs are the Pen Mar Company and the receivers of the Universal Gypsum & Lime Company, who sue to recover for materials furnished in and about the construction of certain buildings for the United States Veterans' Hospital at Perry Point, Maryland (to the value of about $2,000), which was being constructed on a contract between the Government and the J. L. Robinson Construction Company as principal contractor. The defendants are the Robinson Construction Company, the contractor, George S. Van Schaick, Superintendent of Insurance of the State of New York, as Liquidator of the General Indemnity Corporation of America, a New York corporation (which was surety on the contractor's bond), and the General Reinsurance Corporation, also a New York corporation, which executed a reinsurance bond to the Government in connection with the work. The case number of the suit is 5317.

The exact date of final settlement was not stated in the declaration but was admitted at the hearing to have been February 15, 1933.

The suit was instituted February 14, 1934, one day before the expiration of a year from the date of completion and final settlement of the Government contract. On March 21, 1934, the Robinson Construction Company and the General Reinsurance Corporation, each appearing separately and specially, filed motions to dismiss the suit on the ground that the court lacked jurisdiction by reason of the fact that another creditor who had similarly furnished materials for the same building construction had previously filed suit against the contractor and its surety in this court. The prior suit referred to, as appears from the files of this court, is a suit at law No. 5286 in which the plaintiff is the United States of America to the use of the National Tile Company against J. L. Robinson Construction Company, General Indemnity Corporation of America, George S. Van Schaick, Rehabilitator of the General Indemnity Corporation of America, and General Reinsurance Corporation, which was filed December 26, 1933. (No question now arises as to the suability of the Reinsurer in either case.)

On April 17, 1934 (more than a year after the completion and final settlement of the contract), the use-plaintiffs in case No. 5317 filed motions entitled in both the above cases for a consolidation of the two cases, Nos. 5286 and 5317.

After hearing counsel for the respective parties on both motions and further consideration of the matters presented, I have reached the conclusion, somewhat reluctantly, that the motions to consolidate the cases must be denied and the motion to dismiss case No. 5317 must be granted. The two matters can appropriately be considered together and the reasons for the conclusion in both will appear from the discussion.

The following facts appear either from the pleadings or admissions of counsel at the hearing. The date of "completion and final settlement" between the Government and the contractor was February 15, 1933. Under the Hurd Act only the Government could file suit against the contractor and its surety within the period of six months thereafter; and in the event no such suit was filed by the Government, as was the case here, other creditors were permitted to file suit thereafter but only if begun within one year from the date of "final settlement," the provision of the Hurd Act in that respect being as follows:

"That where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: *And provided further,* That where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."

The creditor's suit in case No. 5286 was filed December 26, 1933. Summons was promptly issued for all the defendants and the papers show service in due course on the Robinson Construction Company and on George F. Van Schaick, Rehabilitator of the General Indemnity Corporation, but the return of *non est* was made by the New York marshal as to the General Indemnity Corporation. A letter to the clerk of this court from Alfred G. Bennett, of the Bureau of Liquidations of the Insurance Department of the State of New York under date of December 29, 1933, states that the General Indemnity Corporation had been dissolved and placed in liquidation by an order of the Supreme Court of New York County on August 16, 1933, which order "restrains continuance of any actions against the company or the commencement of new actions," in consequence of which that Department declined to accept service for the General Indemnity Corporation.

The Hurd Act further provides:

"That in all suits instituted under the provisions of this section such personal notice of the pendency of such suits, informing them of their right to intervene as the court may order, shall be given to all known creditors, and in addition thereto notice of publication in some newspaper of general circulation, published in the State or town where the contract is being performed, for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

It is admitted that in case No. 5286 no personal or published notice was given to other creditors and apparently no request was made by counsel for the plaintiffs in that suit to the court for any order with regard to such notice. Published notice was given in case No. 5317, but in view of the time limit for filing claims was necessarily futile.

Case No. 5317 was instituted February 14, 1934, by separate counsel for the two use-plaintiffs. For some time prior to the institution of the last named suit these two use-plaintiffs had been litigating between them-

selves the question as to whether the materials which had been furnished on the Government work had been furnished for the account of one or the other, and apparently it was this litigation (which was still not concluded on February 14, 1934) which had delayed their action to recover on the bond of the general contractor. Counsel for the Pen Mar Company were entirely unaware of the pendency of the prior case on the docket of this court and their client had apparently received no notice thereof. It so happens that the attorney for the other use-plaintiff had filed a petition of intervention on behalf of another creditor, the Manhattan Terrazzo Brass Strip Company, on January 20, 1934, in case No. 5286, but at the time of filing the suit in case No. 5317 he did not have in mind the intervention which he had filed in the former case for another client. Before filing the suit in case No. 5317, counsel for the use-plaintiffs obtained an order from the New York Court which had appointed George S. Van Schaick as Liquidator of the General Indemnity Corporation of America, under date of February 7, 1934, modifying its former order in terms prohibiting suits, so as to permit the Pen Mar Company and the receivers of the Gypsum Company "to institute, but not to further prosecute, an action in the United States District Court for the District of Maryland in the name of the United States in the form pursuant to the statutes of the United States against George S. Van Schaick, Superintendent of Insurance of the State of New York, as Liquidator of the General Indemnity Corporation of America," upon its bond to the United States.

The motion to consolidate the cases is based on USC, title 28, § 734 (28 USCA § 734), which reads as follows:

*"Orders to Save Costs; Consolidation of Causes of Like Nature.* When causes of a like nature or relative to the same question are pending before a court of the United States, or of any Territory, the court may make such orders and rules concerning proceedings therein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so."

This section obviously contemplates the consolidation of two cases where the court has jurisdiction of both. The objection to the consolidation in this case is put on the ground that under the Hurd Act the court does not have jurisdiction of case No. 5317. And this is the controlling question in the case.

It is entirely clear from the precise language of the statute that only one creditor's suit may be filed, and such a suit may be filed in one court only, that is, "in the District Court of the United States in the District in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere." This language is too plain to require any construction and all the federal decisions under the Act expressly or impliedly recognize that only one suit can validly be brought. For illustration, see Mandel v. United States, 4 F.(2d) 629 (C. C. A. 3); United States v. Bradley, 37 F.(2d) 347 (D. C. Pa.); Miller v. American Bonding Co., 257 U. S. 304, 42 S. Ct. 98, 66 L. Ed. 250; United States ex rel. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 58 L. Ed. 893. Therefore, if case No. 5286 was validly instituted in compliance with the provisions of the Hurd Act and was pending at the time of the institution of case No. 5317, it must necessarily follow that the court was without jurisdiction to entertain the latter case.

The use-plaintiffs in No. 5317 contend that case No. 5286 was not a valid case under the Hurd Law because (1) neither personal nor published notice was given to other creditors and (2) no leave had been obtained from the New York Court to sue Van Schaick as Rehabilitator of the General Indemnity Corporation, and therefore it is said case No. 5286 cannot be regarded properly a suit on the contractor's bond. As to the latter point it is sufficient to say that the Circuit Court of Appeals for this Circuit has very recently decided to the contrary in the case of United States, to the Use of Colonial Brick Corporation, v. Federal Surety Company and E. W. Clark, Receiver thereof, 72 F.(2d) 964, decided October 2, 1934, where, in a precisely similar situation (a suit under the Hurd Act), it was held that the receiver of the dissolved Iowa surety company might be sued (under the Hurd Act) despite a general order of the state court appointing him to the contrary. The decision was based largely on the authority of Hopkins, Receiver, v. United States, 246 U. S. 655, 38 S. Ct. 423, 62 L. Ed. 924, affirming United States v. Illinois Surety Co. (D. C.) 238 F. 840. There may be some differences between the Iowa and New York laws with respect to the dissolution of surety companies and the exact status of their receivers or liquidators or rehabilitators, but such differences, if they exist, do not appear in this case and the principle of the decision in United States v. Federal Surety Company, supra, seems to be applicable here.

■ The failure to give notice to creditors in case No. 5286 involves other considerations. The provision of the statute in this respect admittedly presents difficulties in procedure, as has been noted in numerous federal decisions. In U. S. for Use of Alexander Bryant Co. v. New York Steam Fitting Co., 235 U. S. 327, 35 S. Ct. 108, 113, 59 L. Ed. 253, this provision of the statute was held to be "not the essence of the jurisdiction of the court" over such a case; that is, it was held directory and not mandatory. There the objection was made by the surety company and held not available to it. The proviso is obviously in the interest of creditors rather than of the contractor or its surety but even with respect to creditors the court had this to say (in regard to the absence of published notice):

"There can be no sacrifice of rights in it, neither of surety companies nor of creditors. Every creditor has the same rights and may institute the action provided for in the first proviso. If he does not choose to do so it is his own affair; and he may guard against surprise or deception. He knows the time limit of suit and of intervention. He knows that the suit must be brought in the district court of the United States in the district where the contract was performed. It would seem as if the law owed him no further care. If he chooses he may institute proceedings *if another has not done so. If another has, he knows in what court and within what time, and he may intervene.* He has, therefore, the means of suit or the means of intervention. An attentive waiting is all that is necessary for either, and indeed is his ultimate safeguard, as intervention must depend on a suit previously instituted." (Italics supplied.)

And the federal cases on the point both before and after this decision of the Supreme Court have quite uniformly held to the same effect. See United States v. United Surety Company (D. C.) 192 F. 992; United States v. Conners (D. C.) 295 F. 521; United States v. Scheurman (D. C.) 218 F. 915; United States for Benefit of R. I. Covering Co. v. James Miles & Son Co. (D. C.) 55 F.(2d) 249; Vermont Marble Co. v. National Surety Co., 213 F. 429 (C. C. A. 3). It is true that the objection based on the lack of notice in these cases proceeded from the contractor or his surety rather than from other creditors, but as the statutory provision was held by the Supreme Court to be not of the essence of jurisdiction and directory only, it would seem clear that the suit even in the absence of notice to other creditors, cannot be regarded as a nullity, especially in view of what the Supreme Court said in the Bryant Case. Literal compliance with the proviso about notice is in many cases impracticable and would be futile. As literally worded the statute requires what in some cases is an impossibility. Thus if no prior suit has been instituted a creditor may file the suit within a year from the date of completion and final settlement of the contract, but the published notice must be "for at least three successive weeks, the last publication to be at least three months before the time limited therefor." Nevertheless by other mandatory provisions of the statute creditors not instituting the suit but desiring to intervene may do so only within a period of one year from the date of completion and final settlement. Fleischmann Const. Co. v. United States, 270 U. S. 349, 361, 46 S. Ct. 284, 70 L. Ed. 624. It is said by counsel that in certain or many jurisdictions it has become customary to entirely ignore the requirement as to notice. This, however, has not been the practice in this district where, when the matter has been presented to the court before the expiration of the year period, such notice as is possible has been required to be given. In the particular case No. 5286 literal compliance with the requirements as to time of published notice was obviously impossible but if the matter had been called to the attention of the court in that case no doubt the use-plaintiffs would have been required to give at least personal notice at once to any other known creditors and to publish some notice forthwith.

Although there have been numerous decisions under the Hurd Act, counsel for the use-plaintiffs in No. 5317 have not been able to refer me to any case, nor have I been able to find any, which gives any intimation that the failure to give the notice in a prior suit authorizes the bringing of a second and later suit. The objection based on the lack of notice obviously comes with better grace and more force from other creditors who are unaware of the first suit, than from the contractor and his surety. But it must be remembered that what we are here directly concerned with is the objection of the latter that *only one suit may be instituted.* This provision is clearly for the benefit of the contractor and surety and as it is *mandatory,* the *directory* proviso as to notice must yield to it. The statute does not provide that the giving of notice is a condition of the limitation to one suit.

■ It is indeed regrettable that the claim of the present use-plaintiffs in No. 5317 must fail on procedural grounds. Although they are remote sub-contractors having no direct

contractual relation with the principal contractor, and it is said that the latter paid its immediate sub-contractor for the materials in question, it is nevertheless well established that the plaintiffs' claim as disclosed by the declaration (there being as yet no answer in the case on the merits) would have been enforceable against the bond by proper procedure. Mankin v. U. S. to Use of Ludowici-Celadon Co., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315; Taylor v. Connett, 277 F. 945 (C. C. A. 4). But while the act is to be liberally applied for the benefit of materialmen, and courts must endeavor to give coherence to the several provisions of the act to accomplish the intention of Congress and to fulfill its whole purpose (Fleischmann Const. Co. v. United States, 270 U. S. 349, 360, 46 S. Ct. 284, 70 L. Ed. 624) nevertheless the definite and unambiguous provisions of the Act must be strictly observed by creditors who seek to avail themselves of the new statutory remedies thereby created (United States ex rel. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 58 L. Ed. 893).

■■■ The motion to consolidate the cases prays, as an alternative, that case No. 5317 shall be treated as an intervention in case No. 5286. On first impression this seemed to be a reasonable request as the suit is in the same court and was filed as a separate suit instead of an intervening petition in the former case by reason of lack of information or inadvertently. But on further consideration it appears that the request cannot properly be granted because it would in effect be taking jurisdiction of the present use-plaintiffs' claim contrary to the express provisions of the statute. It has been so held by the Circuit Court of Appeals for the Third Circuit in Mandel v. United States, 4 F.(2d) 629, 632. Certiorari denied, 268 U. S. 698, 45 S. Ct. 515, 69 L. Ed. 1163. In that case the Witherow Steel Company filed its separate suit under the Hurd Act within the year and after the expiration of the year obtained an order of court giving it leave to consolidate its action as originally brought with a prior suit, "and/or intervene therein" as of the date of filing its own (second) suit, or, at its option, for leave to amend its original complaint to an intervening petition in the prior case. This was done by a nunc pro tunc order passed long after the expiration of the year period. On appeal the order was reversed and it was said:

"Both by duplicating the first suit and by failing to file its claim in that first suit, the Witherow Steel Company left its claim in a situation where the power of the court below to enforce it was gone. It follows, therefore, that when that court, on November 9, 1922, more than 16 months after the final settlement of April 15, 1921, made a nunc pro tunc order, in which it was sought to restore to the Witherow Steel Company the status and rights which the statute had extinguished, it exceeded its powers. The claim of the Witherow Steel Company is therefore denied."

(The particular order for consolidation or intervention is not expressly mentioned in the opinion of the Appellate Court but counsel for the Robinson Construction Company in this case has furnished me with a copy of the printed record in the case from which the particular order appears at page 139.) And it is to be remembered that the *one* suit authorized by the statute, is a *suit at law* (Illinois Security Co. v. U. S. to Use of Peeler, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609), and there is no opportunity, therefore, to apply peculiarly equitable principles even if they existed in this case. Thus, a creditor's suit prematurely filed in less than six months after final completion cannot be maintained (United States for Use and Benefit of Lancaster Iron Works, Inc., v. Hampton Roads Shipbuilding Corp. (C. C. A. 4) 72 F.(2d) 943 (October 2, 1934); even when an intervening creditor comes in (without new process issued) after the six months and prior to a year (United States ex rel. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 58 L. Ed. 893).

■ It is regrettable that the Hurd Act as drawn involves so many procedural difficulties. See United States for Benefit of R. I. Covering Co. v. James Miles & Son Co., 55 F.(2d) 249 (D. C. Mass.), and United States v. Bradley, 37 F.(2d) 347 (D. C. Pa.). But as was said by the Supreme Court in United States ex rel. Texas Portland Cement Co. v. McCord, 233 U. S. 157, 34 S. Ct. 550, 552, 58 L. Ed. 893, the only duty of the courts is to enforce the suit in accordance with its terms, where they are clear. It was there said:

"By this statute a right of action upon the bond is created in favor of certain creditors of the contractor. The cause of action did not exist before, and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. * * * The statute thus creates a new liability and gives a special remedy for it, and upon well-settled principles the limitations upon such liability become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself."

The inescapable conclusion is, therefore, that the motion to consolidate the cases must be denied and the motions to dismiss case No. 5317 must be granted. Counsel may present the appropriate orders therefor.